**UNITED STATES of America**

v.

**Delfin RAMOS COLON.**

**Crim. No. 74–213.**

United States District Court,
D. Puerto Rico.

March 16, 1976.

---

Julio Morales Sanchez, U. S. Atty., D. Puerto Rico, Jose A. Quiles, Asst. U. S. Atty., D. Puerto Rico, San Juan, P. R., for plaintiff.

Ludmilia Rivera, Juan Mari Bras and H. Schaap, Rio Piedras, P. R., for defendant.

Before TOLEDO, Chief Judge, and TORRUELLA and PESQUERA, District Judges.

## OPINION AND ORDER

TORRUELLA, District Judge.

Defendant has filed a Motion to Dismiss the Indictment and Strike the Petit Jury Array. In substance Defendant contends that the composition of the jury in this District violates 28 U.S.C. § 1861 *et seq.* and the Fifth and Sixth Amendments of the Constitution of the United States, because it is claimed that in Puerto Rico the English language requirements of 28 U.S.C. § 1865 [1] result in jury panels which are not a "fair cross section of the community in [this] [D]istrict." [2] Therefore, it is argued, Defendant is being held accountable in a felony offense by reason of an indictment returned by a grand jury, and is being tried before a petit jury, which are unrepresentative of the citizens of this community, all in violation of due process of law. A related but separate contention alleges that the procedures used in this District do not sufficiently guarantee that those jurors now serving in the pool be sufficiently competent in English to meet the mentioned statutory and constitutional requirements.

On this last question, Defendant has requested that the Court authorize giving all jurors in the pool, what is labeled by counsel "objective, standardized oral and written tests of English understanding" to determine the competency of jurors. On the first issue we are further asked "for a hearing pursuant to 28 U.S.C. § 1867(a), (d) and (f)", at which hearing it is requested that evidence be also allowed on the results of the proposed competency examination.

## I.

Our departure point is thus to determine whether Defendant is entitled to a hearing under 28 U.S.C. § 1867.

The relevant sections of that Statute read as follows:

"(d) Upon motion filed under subsection (a), . . . of this section, containing a sworn statement of facts which, if true, would constitute a substantial failure to comply with the provisions of this title, the moving party shall be entitled to present in support of such motion the testimony of the jury commission or clerk, if available, any relevant records and papers not public or otherwise available used by the jury commissioner or clerk, and any other relevant evidence. . . . "

We are thus required to analyze the sworn statement filed in support of the Motion to determine whether the facts alleged therein constitute a substantial failure to comply with 28 U.S.C. § 1861 *et seq.* To this effect we will accept the factual allegations as true, keeping in mind however that the burden is on Defendant to prove non-compliance with the statute. *U. S. v. Smaldone*, 485 F.2d 1333 (CA 10, 1973), cert. den. 416 U.S. 936, 94 S.Ct. 1934, 40 L.Ed.2d 286 (1974), reh. den. 416 U.S. 1000, 94 S.Ct. 2414, 40 L.Ed.2d 777 (1974), reh. den. 417 U.S. 926, 94 S.Ct. 2635, 41 L.Ed.2d 230 (1974).

The supporting affidavit presented herein is a copy of one filed in the case of *United States v. Union Nacional de Trabajadores et al,* Crim.No. 164–73, which was before Chief Judge José V. Toledo of this District. In that case counsel for those Defendants, who are substantially the same defense counsel as in the present case, were allowed access and permitted to copy the juror qualification questionnaires. These are still available to counsel in the present case, and the information contained therein forms the basis for that affidavit.

The relevant highlights of that sworn statement are as follows:

The juror qualification questionnaires were mailed to prospective jurors drawn

---

1. 28 U.S.C. § 1865(b)(2) and (3) establish that a juror be able "to read, write, and understand the English language with a degree of proficiency sufficient to fill out satisfactorily the juror qualification form" and be able "to speak the English language."

2. 28 U.S.C. § 1861.

from the master jury wheel in 1973 and 1975. The master jury wheel contains all the names drawn from the voter registration lists as provided by the "Amended Plan for the Random Selection of Grand and Petit Jurors", prepared pursuant to 28 U.S.C. § 1861 et seq.

Out of 11,012 questionnaires sent out to persons drawn from the master jury wheel, 6,750 were either not returned or not delivered. Of the 4,262 questionnaires that were returned, 171 persons survived the English literacy requirement but were otherwise exempt from jury duty, and 569 persons were fully qualified to serve as jurors and have served or are available to serve as jurors. Of the returned questionnaires, 3522 were disqualified for insufficient English, which number constitutes 83% of the returned forms.

Based on these statistics, and the affidavit's own definition of "classes" in Puerto Rico,[3] it is stated that the qualified jury pool is composed of 91.2% "upper class", 54.4% "middle class", and 9.7% "lower class" citizens as compared to 12.1%, 25.9% and 62%, respectively, for those same classifications in the total Puerto Rican population.

Further statistics in the affidavit show that even under Defendant's "class" definitions, all "classes" are represented in the jury panel, although admittedly not in the same proportion as are claimed exist in the total population. It is alleged that this under-representation of the "lower classes" results *"almost exclusively from the English language requirement"*[4] which eliminates 90.3% of the "lower class" persons who return questionnaires, as compared to 41.1% eliminated from the "middle class" and 8.8% from "higher class."

The affiant also states that the questionnaires reveal that non-whites constitute only 11% of the qualified jury pool as compared with 20.2% of non-whites in the census population. It is again concluded . . "that the *English literacy is disproportionately responsible* for disqualification of non-whites as compared to whites." . . . [5]

Lastly, it is stated that "[o]n the basis of inspection of the questionnaires and certain extrinsic information available to Defendants it is further alleged that the jury selection process has deliberately excluded, exempted or disqualified persons whose political views are antagonistic to the United States."

Defendant's contentions are thus reduced to a claim that the English language requirement causes substantial underrepresentation of (a) persons in "lower classes" and (b) persons who are "nonwhite", and that there is deliberate exclusion of those whose views are known to be antagonistic to the United States.

■ Under the circumstances in which it is raised, we consider this last allegation to be of the "red herring" variety. It is conclusionary and totally unsupported by any *facts,* and therefore fails to meet the muster of 28 U.S.C. § 1867(d). Thus, we are not required to give this contention any further attention herein.[6]

Turning now to the claimed underrepresentation caused by the English language requirements, let us analyze whether the factual allegations in the affidavit "constitute a substantial failure to comply with the provisions of this title [28 U.S.C. 1861 et seq.]."

■ In looking at the declaration of policy contained in 28 U.S.C. § 1861 we find that it requires that grand and petit juries be "selected at random from a fair cross section of the community" and that "all

---

3. Which definition is most conclusionary and fails to meet the test of "statement of fact" required by 28 U.S.C. § 1867(d), but which we accept *arguendo.* See *U. S. v. Mirabal Carrión,* 140 F.Supp. 226, 230 (DC PR, 1956); *U. S. v. Guzmán,* 337 F.Supp. 140 (DCNY, 1972), aff'd 468 F.2d 1245 (CA 2, 1972), cert. den. 410 U.S. 937, 93 S.Ct. 1397, 35 L.Ed.2d 602 (1973).

4. Emphasis supplied.

5. Id.

6. We are of course not deciding whether or not *voir dire* is appropriate on the question of possible political antagonisms by individual jurors, assuming that is relevant to this case.

citizens . . . have the opportunity to be considered for service." This does not mean that precise proportional representation of any particular group is required on the grand or petit panel, *U. S. v. Jenkins,* 496 F.2d 57 (CA 2, 1974), cert. den. 420 U.S. 925, 95 S.Ct. 1119, 43 L.Ed.2d 394 (1975); *U. S. v. Ross,* 468 F.2d 1213 (CA 9, 1972), cert. den. 410 U. S. 989, 93 S.Ct. 1500, 36 L.Ed.2d 188 (1973); *U. S. v. Greene,* 160 U.S.App. D.C. 21, 489 F.2d 1145 (1973), cert. den. 419 U.S. 977, 95 S.Ct. 239, 42 L.Ed.2d 190 (1974), reh. den. 419 U.S. 1041, 95 S.Ct. 530, 42 L.Ed.2d 318 (1974), but rather that the group from which they are selected be taken by chance (i.e., at random), from the community. As stated in the supporting affidavit, this was done in this case from the master jury wheel using the voter registration lists and thus, there is compliance with 28 U.S.C. §§ 1963 and 1864, *U. S. v. King,* 492 F.2d 895 (CA 8, 1974); *U. S. v. Whitley,* 491 F.2d 1248 (CA 8, 1974), cert. den. 416 U.S. 990, 94 S.Ct. 2399, 40 L.Ed.2d 769 (1974); *Hallman v. U. S.,* 490 F.2d 1088 (CA 8, 1973); *U. S. v. Dellinger,* 472 F.2d 340 (CA 7, 1972), cert. den. 410 U.S. 970, 93 S.Ct. 1443, 35 L.Ed.2d 706 (1973); *U. S. v. Ross,* 468 F.2d 1213 (CA 9, 1972), cert. den. 410 U.S. 989, 93 S.Ct. 1500, 36 L.Ed.2d 188 (1973); *U. S. v. McDaniels,* 370 F.Supp. 298 (E.D.La.,1973), aff'd sub nom. *U. S. v. Goff,* 509 F.2d 825 (CA 5, 1975); *U. S. v. Kuhn,* 441 F.2d 179 (CA 5, 1971); *U. S. v. James,* 453 F.2d 27 (CA 9, 1971); *U. S. v. Arnett,* 342 F.Supp. 1255 (D.C.Mass.,1970). There is no allegation or proof that this *initial source list* does not accurately represent the make-up of the community. It is this initial source that is intended to be protected by this statute. See U. S. Code Congressional and Administrative News, Vol. 2, 90th Congress, 2nd Session, 1968, p. 1794. *U. S. v. Davis,* 518 F.2d 81 (CA 10, 1975), cf. *Rabinowitz v. U. S.,* 366 F.2d 34 (CA 5, 1966); *U. S. v. Fernández,* 480 F.2d 726 (CA 2, 1973); *U. S. v. Guzmán,* 468 F.2d 1245 (CA 2, 1972), cert. den. 410 U.S. 937, 93 S.Ct. 1397, 35 L.Ed.2d 602 (1973).

The statement of policy to the effect that all citizens be granted an opportunity to *be considered* for jury duty we understand to mean that individuals will be considered but can only serve if they also meet the qualification requirements for jury service contained in 28 U.S.C. § 1865. *U. S. v. Torquato,* 308 F.Supp. 288 (W.D.Pa., 1969). See U.S. Code Congressional and Administrative News, supra, at page 1798. Among those requirements are precisely the English language proficiency which Defendant claims brings about the alleged underrepresentation. Consequently it can not be seriously contended that there is "failure to comply with the provisions of this title", because it is in fact said compliance that brings about the results complained of by Defendant. See *U. S. v. Valentine,* 288 F.Supp. 957, 970 (DC PR, 1968).

Furthermore, again looking only at the issue of statutory compliance,[7] any underrepresentation brought about by the English language requirement is within a permissible scope allowed by Congress. See U.S. Code Congressional and Administrative News, supra, at page 1798. In enacting this Statute in 1968 it must be presumed that Congress was fully aware that in several of the district courts covered by this enactment, in addition to that of Puerto Rico (see U.S. Code Congressional and Administrative News, supra, at pages 1793 and 1800) there are substantial non-English speaking populations which would be affected by an English language requirement. See 28 U.S.C. § 1869(f); see also *U. S. v. de Jesús Boria,* 518 F.2d 368 (CA 1, 1975), *U. S. v. Tijerina,* 446 F.2d 675 (CA 10, 1971); *U. S. v. De Alba-Conrado,* 481 F.2d 1266 (CA 5, 1973); *Guam v. Palomo,* 511 F.2d 255 (CA 9, 1975); *Government of the Canal Zone v. Scott,* 502 F.2d 566 (CA 5, 1974); *U. S. v. Okiyama,* 521 F.2d 601 (CA 9, 1975).

This is particularly relevant when we consider that there were English language requirements that preceded the 1968 stat-

---

7. In contrast to the constitutional issue (see *U.S. v. Valentine,* supra, at pages 969–970), which will be discussed presently.

ute, and that these requirements were substantially the same as in the present provision.[8]

In view of the above it is clear that Defendant has not alleged "facts which, if true, would constitute a substantial failure to comply" with the law. Therefore, Defendant is not entitled as a matter of law to any further evidentiary hearings on this issue,[9] and the same would serve no purpose other than to further delay the trial of a criminal case that has been pending before this Court for more than two years.

Keeping in mind however that the question of jury composition also raises constitutional issues, as distinguished from questions of statutory compliance, we must discuss whether the English language requirement as applied to jurors in Puerto Rico contravenes the fundamental law of the land.

■ From a constitutional standpoint it is well settled that voting lists may be used as a basis for jury selection unless it appears that in the community there is *systematic, intentional* and *deliberate* exclusion from those lists of a particular economic, social, religious, racial, geographical or political group. *Fay v. New York,* 332 U.S. 261, 273–277; 290–294, 67 S.Ct. 1613, 91 L.Ed. 2043, reh. den. 332 U.S. 784, 68 S.Ct. 27, 92 L.Ed. 367 (1947); *U. S. v. Greene,* supra; *Gorin v. U. S.,* 313 F.2d 641 (CA 1, 1963), cert. den. 374 U.S. 829, 83 S.Ct. 1870, 10 L.Ed.2d 1052 (1963), appeal after remand 336 F.2d 211 (CA 1, 1964), cert. den. 379 U.S. 971, 85 S.Ct. 669, 13 L.Ed.2d 563 (1965); *U. S. v. Ross,* 468 F.2d 1213, 1217 (CA 9, 1972); *U. S. v. Valentine,* supra, at pages 971–974.

■ There has been no allegation in this case, much less proof of such action as regards the voters lists notwithstanding that the burden is on Defendant to prove the unconstitutionality of this procedure. *Fay v. New York,* supra, at 332 U.S. at page 285, 67 S.Ct. 1613; *Virgin Is. v. Navarro,* 513 F.2d 11 (CA 3, 1975); *U. S. v. Ware,* 473 F.2d 530 (CA 9, 1973). Furthermore mere showing that there is disproportion in the ultimate composition of the jury furnishes no basis whatsoever for an inference of systematic, intentional or deliberate exclusion. *Fay v. New York,* supra, 332 U.S. at page 284, 67 S.Ct. 1613; *U. S. v. Mirabal Carrión,* supra, at pages 229–230; *U. S. v. McDaniels,* 370 F.Supp. 298 (E.D. La., 1973), aff'd 509 F.2d 825 (1975); *U. S. v. Deardorff,* 343 F.Supp. 1033 (S.D.N.Y. 1971). It should be pointed out that in the *Fay* case the Supreme Court did in effect approve New York's "understanding of English" requirement for jurors[10] in the face of attacks similar in nature to the present allegations. See *Fay v. New York,* supra, 332 U.S. at page 291, 67 S.Ct. 1613. Defendant's argument is grounded on the basic fallacy that the Constitution requires that juries be drawn from a cross-section of the *total* population without the imposition of any qualifications, a contention which at this late date is spurious. See *United States v. Valentine,* supra, at pages 965–966, 973–974; *U. S. v. Gordon-Nikkar, 518 F.2d 972, 975 (CA 5, 1975).*

---

8. 28 U.S.C. § 1861(2) established that a federal juror be able "to read, write, speak and understand the English language." However, Puerto Rico's District Court was not covered by this provision. Commencing in 1906 (see Act of June 25, 1906, c. 3542, 34 Stat. 466), and through 1968, jurors in this District were covered by 48 U.S.C. § 867, which required that to qualify, a person "have a sufficient knowledge of the English language to enable him to serve as a juror." See *Quiñones v. U. S.,* 161 F.2d 79 (CA 1, 1947), cert. den. 331 U.S. 833, 67 S.Ct. 1513, 91 L.Ed. 1846 (1946); *U. S. v. Mirabel Carrión,* 140 F.Supp. 226 (DC PR, 1956); *Miranda v. United States,* 255 F.2d 9 (CA 1, 1958); *Carpintero v. United States,* 398 F.2d 488 (CA 1, 1968); *U. S. v. Valentine,* 288 F.Supp. 957 (DC PR, 1968).

9. A preliminary hearing, with testimony from Defendant's witnesses was held on January 8, 1976. As a practical matter, considering that the Court's jury records have already been made available to counsel, and have been the basis of the supporting affidavit, the factual basis of any such additional hearing has been substantially before us.

10. Other New York requirements, such as tests for intelligence, result in even more restrictive jury pools, and yet were held to be valid by *Fay.*

The *Valentine* case, decided by former Chief Judge Hiram R. Cancio of this Court, contains language which bears repetition because it has relevance to the constitutional issues raised herein.

" . . . This court is not a local court of Puerto Rico. Rather, it is a United States district court, part of the federal judicial system, litigating cases arising under the Constitution and laws of the United States or by reason of diversity of state citizenship . . . Just as Spanish is 'the language of the Puerto Rican people' . . . the United States has from the time of its independence been an English-speaking nation . . . [N]o Continental American court, federal or state, has ever conducted its proceedings in any language other than English . . . [W]hile it was proper for Congress to recognize from the beginning Puerto Rico's uniqueness among newly acquired territories, and not force English here as the official local language . . ., it is equally proper that this court, being a federal rather than a local court, conduct its proceedings in English rather than the Spanish language . . ."

Indeed, it is difficult to conceive how this court could remain a viable part of the federal judicial system if proceedings here were conducted in Spanish . . ." (at pages 963–964, citations excluded).

■ Naturally, requiring that jurors in Puerto Rico meet an English language requirement is part of making the United States District Court for the District of Puerto Rico "a viable part of the federal judicial system", since it can hardly be disputed, and is in fact recognized by Defendant in the second subject matter of his Motion, that jurors have to understand the proceedings held before them and of which they constitute an indispensable and integral part. Furthermore, considering that this Court is now a constitutional district court pursuant to Article III, Section 2 of the Constitution,[11] the use of English in its proceedings, and the language qualification requirements of jurors which follow as the logical consequences thereof, is not merely a question of convenience or practicality but is a constitutional imperative in that English being the constitutional language of the United States and of its Institutions,[12] the use of said language in its proceedings ceases to be a question of adjective law but is a matter of constitutional substance. Leaving aside the almost insurmountable practical considerations (some of which are referred to by *Valentine,* supra, at pages 964–965) that would be prompted by any legislation that permitted non-English as an official language in constitutional proceedings, we express, without of course deciding at this time, serious reservations as to their possible validity as applied any Article III court, even were such legislation

11. Article III, Section 2, clause 1, states in its pertinent parts:
"The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States . . ."
In *Miranda v. U. S.,* supra, at pages 14–15, the Court of Appeals said:
" . . . [I]t is apparent that Congress was intent on raising the status of the district court in Hawaii and Puerto Rico from that of territorial courts established under the respective organic acts to that of district courts of the United States established under the federal judicial code, revised title 28, on a parity with the other federal district courts and deriving their authority from the same statutory source from which all district courts in the federal judicial system receive their powers. Indeed, since these two courts exercise only federal judicial power as defined by Article III, section 2, of the

Constitution they might well be regarded as constitutional district courts indistinguishable in any respect from federal district courts in the States, were it not for the fact that Congress has treated their judges differently from the other district judges in the matter of tenure of office."
Since 1966 this last vestige of inequality has been eliminated by Congress. 28 U.S.C. § 134. See U. S. Code Congressional and Administrative News, Vol. 2, 89th Congress, 2nd Session, 1966, pp. 2786–2790. See also *Ex-parte Bakelite Corporation,* 279 U.S. 438, 49 S.Ct. 411, 73 L.Ed. 789 (1929).

12. Cf. *Commonwealth v. Olivo,* 337 N.E.2d 904, 911 (Mass. 1975); *Carmona v. Sheffield,* 325 F.Supp. 1341, 1342 (N.D.Cal., 1971), aff'd 475 F.2d 738 (CA 9, 1973). See also 8 U.S.C. § 1423(1).

to be uniformly applicable to all such courts throughout the Federal jurisdiction.

The parties are reminded of what was said by the Supreme Court in *Fay v. New York,* supra, 332 U.S. at pages 288–289, 67 S.Ct. at page 1628:

" . . . . Trial must be held before a tribunal not biased by interest in the event. Undoubtedly a system of exclusions could be so manipulated as to call a jury before which defendants would have so little chance of a decision on the evidence that it would constitute a denial of due process. A verdict on the evidence, however, is all an accused can claim; he is not entitled to a set-up that will give a chance of escape after he is properly proven guilty. Society also has a right to a fair trial. The defendant's right is a neutral jury. He has no constitutional right to friends on the jury."

We conclude that Defendant's allegations respecting the jury composition are without merit.

## II.

We must now turn to the issue of competency of jurors to understand the English language proceedings, as distinguished from those of composition which we have already discussed.

In addition to the affidavit supporting the original motion, Defendant filed a second affidavit, and an affidavit of Dr. Luis Nieves Falcón, all of which deal at least partially with this question.[13] Dr. Nieves Falcón also testified at the January 8, 1976 hearing on this issue. The substance of the affidavits and testimony is that Defendant contends that he has a better and more scientific method of determining a juror's proficiency in English than that established by Congress. This could very well be and may even be accepted *arguendo.* However, enactment of legisla-

tion is not within the scope of a court's authority. Cf. *U. S. v. De Jesús Boria,* supra, at page 371. This Court must accept the guidelines established by Congress unless these are somehow constitutionally unsound.

■ We cannot agree with Defendant's contention that a procedure whereby prospective jurors are first required "to read, write and understand the English language with a degree of proficiency sufficient to fill out satisfactorily the juror qualification form", wherein they are then submitted to oral interrogation by a district judge, and are lastly subjected to *voir dire* in English on the date of trial, fails to provide Defendant with a jury sufficiently versant in English as to deprive him of due process of law. *U. S. v. Valentine,* supra, at page 965.

Counsel for Defendant, in the second affidavit submitted, makes reference to the pre-empaneling *voir dire* conducted by Chief Judge José V. Toledo on July 14, 1975 and contends that "[t]he proceedings indicate that the entire *voir dire* for English language competency was conducted in Spanish." This constitutes a gross misinterpretation of the record which in this respect indicates that the following took place after several questions under oath had been asked of the prospective jurors by the judge.[14]

"THE COURT: I hear no response, therefore I take it that the answer is, no. Is there any one of you who is not able to read, write, speak or understand the English language? Off the record.

(The proceedings from this point transpired in the Spanish language).

THE CLERK . . . . "[15]

This record can be objectively interpreted in three ways. The first interpretation is that when the language question was asked, several persons were at least profi-

---

**13.** We note in passing that although we failed to make specific reference to these other affidavits earlier in the decision, we did consider them in weighing Defendant's contention regarding composition.

**14.** Defendant's affidavit contains a photocopy of the transcript for this empanelling.

**15.** At this point the Clerk read 19 names accompanied by their respective numbers on the panel list.

cient enough in English to understand what was being asked and indicated some response. The judge then proceeded to interrogate them in Spanish as they had indicated lack of knowledge in English. Thereafter the Clerk eliminated those persons from the list. This conversation was unrecorded because the reporters in this District cannot record in Spanish.[16] The second analysis presumes that when the question was asked no one indicated any response. The presiding judge could not be satisfied with this however, as non-English versant prospects would obviously be unable to understand the English-phrased question. Thus the judge had to proceed in Spanish to assure himself that the questions had been fully comprehended by all present. For the reason previously stated the Spanish was not recorded, but again thereafter those not qualified were stricken from the list. The last alternative, which is probably what actually transpired, is that a combination of both the first and second situations took place.

In any event we conclude that none of these alternatives were intrinsically inadequate and in fact we hold that they fully meet the requirements of 28 U.S.C. § 1865(a) to the effect that the judge determine whether a person is qualified "*solely* on the basis of information provided on the juror qualification form and other competent evidence" (emphasis supplied). See *U. S. v. Leonetti,* 291 F.Supp. 461 (S.D.N.Y. 1968). Furthermore, it is clear that the grand jury empanelled on that day is not the grand that indicted Defendant in 1974, nor is there any showing that this is the petit jury panel that will try Defendant.

Defendant will of course be granted the opportunity at trial to supplement the Court's *voir dire,* pursuant to the practice followed in this District. *Bumpus v. Uniroyal Tire Co., Div. of Uniroyal Inc.,* 392 F.Supp. 1405 (E.D.Pa., 1975).

Considering the above Defendant's Motion is hereby DENIED.

IT IS SO ORDERED.

TOLEDO, Chief Judge, and PESQUERA, District Judge:

We are in agreement with the substantive content of this Opinion and Order.

---

16. Another of the practical problems presented by a request for non-English proceedings.