**UNITED STATES of America, Plaintiff,**

**v.**

**Pablo MARCANO et al., Defendants.**

**Crim. No. 78–107.**

United States District Court,
D. Puerto Rico.

Nov. 7, 1980.

---

464

Daniel Lopez Romo, U. S. Atty., San
Juan, P. R., for plaintiff.

Pedro Varela and José E. Carreras, Hato
Rey, P. R., for defendants.

## OPINION AND ORDER

TORRUELLA, District Judge.

This case is now before us upon Defendants' "Motion to dismiss indictment and to strike the petit jury array and/or for new trial", and the Government's opposition thereto.

The Motion is made under the provisions of 28 U.S.C. Sec. 1867(d). Defendants allege in substance that the jury pool[1], from which the grand and petit jurors of the case at bar were drawn, was not selected in accordance with the provisions of the Sixth Amendment[2] of the Constitution of the United States and the Jury Selection and Service Act of 1968, 28 U.S.C. Secs. 1861 *et seq.* ("Act"). Defendants further move this Court for a hearing as provided in 28 U.S.C. Sec. 1867(d).

Our initial duty is to determine whether the Defendants have complied with the requirements of 28 U.S.C. Sec. 1867 for this type of Motion and which constitute "the strict prerequisites that Congress established for challenging juries alleged to have been selected in violation of the Act." *United States v. Foxworth*, 599 F.2d 1, 3

1. Defendants use the term "jury pool" throughout their Motion and accompanying Memorandum of Law. We read it as referring to the master jury wheel or the qualified jury wheel, as applicable.

2. Defendants also allege violations to the Fourteenth Amendment in the jury selection process. Since the jury pool challenged herein was selected under Federal law and to serve in a Federal Court, the invocation of the Fourteenth Amendment in this case is misplaced. *Compare Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975) *and Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968).

(1st Cir., 1979). *Accord, United States v. Merlino*, 595 F.2d 1016, 1020 (5th Cir., 1979) *cert. denied*, 444 U.S. 1071, 100 S.Ct. 1014, 62 L.Ed.2d 752; *United States v. Rodriguez*, 588 F.2d 1003, 1009 (5th Cir., 1979); *United States v. D'Alora*, 585 F.2d 16, 22 (1st Cir., 1978); *United States v. Young*, 570 F.2d 152, 153 (6th Cir., 1978); *United States v. Kennedy*, 548 F.2d 608, 609 (5th Cir., 1977), *cert. denied*, 434 U.S. 865, 98 S.Ct. 199, 54 L.Ed.2d 140 (1977); *United States v. Jones*, 480 F.2d 1135, 1139 (2nd Cir., 1973).

"Section 1867(a) of the Act provides that a defendant, by motion to dismiss the indictment, may challenge jury selection procedures for substantial failure to comply with the Act. Section 1867(d) requires that the motion contain 'a sworn statement of facts, which, if true, would constitute a substantial failure to comply with the provisions of this title.' Section 1867(e) states that 'the procedures prescribed by this section shall be the exclusive means by which a person accused of a Federal crime . . . may challenge any jury on the ground that such jury was not selected in conformity with the provisions of this title.'" *United States v. Foxworth*, 599 F.2d at 3.

In the case at bar Defendants' Motion, filed on August 28, 1980, does not contain the required sworn statement of fact. The Report[3] filed by Defendants together with

the Motion, was not sworn. The original "Motion to dismiss indictment and to strike the petit jury array" filed on August 10, 1978 did not contain any sworn statement either. Said Motion simply stated *in fine* that "Defendants further move that Affidavits and demographic data studies will be filed in this case in the next thirty days." No such affidavits, however, appear on file.

■ From the foregoing it is evident that Defendants have had more than ample time to file the required sworn statement. They have, nevertheless, failed to do so. "[Such] failure to comply with the express statutory requirement of Section 1867(d) precludes [Defendants'] statutory challenge to the jury selection process." *Id. Accord, United States v. Kennedy*, 548 F.2d at 612–613; *United States v. Jones*, 480 F.2d at 1139.

However, in spite of Defendants' failure to properly present their Motion, and since they also make constitutional[4] challenges to the jury selection process, we have fully considered all of Defendants' claims, which may be enumerated as follows:

1. The jury pool was not randomly selected as required by 28 U.S.C. sec. 1861 *et seq.*[5]

2. The jury pool was illegally constituted because the mandate of 28 U.S.C. sec. 1864(a) was consistently violated in the selection of jurors.[6]

---

3. Appended to Defendants' Motion was a "Report on the Procedure and Selection of the Jury Wheel at the United States District Court for the District of Puerto Rico" dated August, 1980 and signed by Francisco Torres, Ph.d. and Carlos E. Toro, Ph.d. (hereinafter referred to as "Report").

4. Section 1867(e) provides *in fine*:
"Nothing in this section shall preclude any person or the United States from pursuing any other remedy, civil or criminal, which may be available for the vindication or enforcement of any law prohibiting discrimination on account of race, color, religion, sex, national origin or economic status in the selection of persons for service on grand or petit juries."
Therefore, "section 1867(e) of the Act preserves the vehicle of constitutional challenge, even though noncompliance with § 1867 may foreclose statutory attack." Hon. Walter P. Gewin, *An Analysis of Jury Selection Deci-*

sions, 506 F.2d 811, 814 (footnotes omitted) (Appendix to the Opinion in *Foster v. Sparks*, 506 F.2d 805 (5th Cir., 1975)) (hereinafter referred to as "Judge Gewin's Study"). *See United States v. De Alba Conrado*, 481 F.2d 1266, 1269–1270 (5th Cir., 1973). *Compare United States v. D'Alora*, 585 F.2d at 22.

5. It is alleged in the Report that the purported lack of randomness violated also the provisions of the "Amended Plan for the Random Selection of Grand and Petit Jurors Pursuant to the Jury. Selection and Service Act of 1968, as Amended" (hereinafter "Plan"). See Report, pp. 3–5 and 16.

6. Defendants do not discuss such claim in their Memorandum of Law. We will assume they are referring to the allegation made in the Report that a percentage of the questionnaires sent in 1977 and 1978 to prospective jurors were either not delivered, not returned, or returned with one or more items unanswered. Report, pp. 6–7.

3. The jury pool was constitutionally and legally defective in that cognizable classes were systematically excluded or underrepresented as follows: person of the working class or of lower socioeconomic status, the lesser educated, non-whites and young people.

4. The jury pool was unconstitutionally and illegally constituted in that the criteria applied by the Court in determining qualification and disqualification of persons based on their English language ability, deliberately and systematically discriminates in favor of including those who are more educated and of higher socioeconomic status, and against persons who are under-educated and of lower socioeconomic status.

5. The jury pool was illegally constituted in that an overwhelming majority of jurors were qualified in violation of the requirement of Section 1865(b)(2) that they know sufficient English to be able to fill out satisfactorily the juror qualification questionnaires.

6. The jury pool was constitutionally and legally defective because a substantial proportion of the prospective jurors were not sufficiently competent in the English language to satisfactorily perform jury service.

We shall discuss Defendants' claims in the above order.

The terms of the Act provide that all litigants in Federal Courts entitled to trial by jury shall have the right to grand and petit juries selected at random [7] from a fair cross-section of the community within the district and that "all citizens shall have the opportunity to be considered for service." 28 U.S.C. Sec. 1861. The Plan contains similar provisions but with reference to the District of Puerto Rico. It also provides that "[n]ames of prospective jurors to serve on grand and petit juries in this Court shall be selected only from the certified lists of registered voters maintained by the Elec-

toral Tribunal of the Commonwealth of Puerto Rico for each and every one of the voting precincts of the Commonwealth of Puerto Rico." (Plan, par. 5).

Defendants claim that the master jury wheel from which the juries in the case at bar were drawn, was not selected *at random* as required by the Act and the Plan. Their allegations are as follows: [8] The total number of voters registered and authorized to vote at the general elections held on November 2, 1976, was of 1,701,217. The master jury wheel used in this case consisted of 68,000 names chosen at random from said electoral lists as provided in the Plan. Using a lottery process, the number 22 was randomly selected as the starting number for the selection process. Therefore, 68,000 names were drawn, beginning with the 22nd name in the electoral lists, and then picking out every 25th name thereafter until all of the 68,000 were selected. (Report, pp. 3–4). Defendants' argument is as follows: A random selection requires that each name in the list have a non-zero probability of selection. In this case the assigned probability is .04, that is, one out of twenty-five. Since the Court established that 68,000 would be selected, the electoral lists were used up to the name listed in the 1,700,000th position. That is, 1,700,000 divided by 25 equals 68,000. Since there was a total of 1,701,217 names in the electoral list, the process of selection carried out by the Court assigned zero probability to one thousand two hundred seventeen (1,217) persons in violation of the terms of the Act and the Plan. (Defendants' Memorandum, p. 14, Report, pp. 4–5).

■ Defendants erroneously interpret the "at random selection" requirement of the Act and the Plan as meaning at random sampling as this term is used by mathematicians and sociologists. Neither the Act nor the Plan make such a demand. It is clear

---

7. The right to a jury selected *at random* is a requirement of the Act, that is, a statutory creation, not a constitutional command. *United States v. Hawkins*, 566 F.2d 1006, 1012 (5th Cir., 1978), *cert. denied*, 439 U.S. 848, 99 S.Ct.

150, 58 L.Ed.2d 151 (1978); *United States v. Kennedy*, 548 F.2d at 614.

8. We will accept *arguendo*, those that constitute allegations *of fact*.

from the legislative history of the Act that it "does not insist upon randomness in the sense in which that term might be understood by statistitians." S.Rep.No.891, 90th Cong., 1st Sess., p. 16 n. 9, *quoted in United States v. Valentine*, 288 F.Supp. 957, 973 (D.P.R.1968). All that is required is that the names by selected *by chance* (i. e., at random) from the corresponding source, in this case the electoral lists for the November 2, 1976 election. See *United States v. Ramos Colón*, 415 F.Supp. 459, 462–463 (D.P.R.1976); H.R.Rep.No.1076, 90th Cong., 2d Sess., *reprinted in* [1968] U.S.Code Cong. and Ad.News 1792, 1800. *Compare United States v. Kennedy*, 548 F.2d at 610–611.

■ An examination of Defendants' allegations and data fails to establish that the master jury wheel was not so selected. Said allegations indeed show the opposite, i. e., that the at random requirement was adequately complied with.

If we use Defendants' numbers and divide 1,701,217 (the alleged total number of persons in the electoral lists for the November 2, 1976 general elections) by 68,000 (the alleged total number of names drawn from said lists), the quotient is 25.017897. Since this quotient was to represent a position in the electoral lists, it had to be rounded to the nearest integer number, i. e., number 25. This number was used to select the name in every 25th position after the starting number. See Plan, par. 10(b)(3). There was a comprehensive and adequate coverage of the electoral lists in the selection of the names for the master jury wheel. There is no requirement, as Defendants' argument would seem to imply, that the name at the end of the electoral lists has to be selected. Indeed, such a predetermined requirement would be contrary to the at random selection policy of the Act and the Plan.

Defendants' first claim, related to lack of randomness in the master jury wheel selection procedure, is therefore without merit.

■ Defendants also allege that the mandate of Section 1864(a) was consistently violated. As stated above, they do not discuss such claim, but we will assume it refers to the allegations made in the Report that a percentage of the jury qualification questionnaires sent in 1977 and 1978 were either not delivered, not returned or returned with some items not filled out. (Report, pp. 2, 6). Accepting *arguendo* these allegations, Section 1864(a) provides for discretionary, not mandatory, follow up by the clerk or jury commission in case of failure to return the jury qualification form. *United States v. Santos*, 588 F.2d 1300, 1303 (9th Cir., 1979), *cert. denied*, 441 U.S. 906, 99 S.Ct. 1994, 60 L.Ed.2d 374; *United States v. Jenison*, 485 F.Supp. 655, 668 (S.D.Fla., 1979); *United States v. Armsbury*, 408 F.Supp. 1130, 1142 (D.Or.1976). "Accordingly, any failure to require return of completed juror forms cannot constitute substantial noncompliance with the Act." *United States v. Jenison*, supra. See also *United States v. Santos*, supra; *United States v. Armsbury*, 408 F.Supp. at 1142.

As to the alleged omissions in filling out one or more items in some of the returned questionnaires, in order to be entitled to a remedy it does not suffice for Defendants merely to show that there has been a noncompliance with Section 1864(a). "The exclusive ground for challenging jury-selection procedures under the statutes is 'substantial failure to comply' with the Act." *United States v. Davis*, 546 F.2d 583, 589 (5th Cir., 1977), *cert. denied*, 431 U.S. 906, 97 S.Ct. 1701, 52 L.Ed.2d 391 (1977). See also, H.R.Rep.No.1076, *id.* at 1805; *United States v. Goodlow*, 597 F.2d 159, 162 (9th Cir., 1979), *cert. denied sub nom. Wallace v. United States*, 442 U.S. 913, 99 S.Ct. 2830, 61 L.Ed.2d 280 (1979); *United States v. Smith*, 588 F.2d 111, 115 n. 22 (5th Cir., 1979), *modified*, 594 F.2d 1084 (5th Cir., 1979). That is, a remedy is not provided for every violation of the Act, only for *substantial* failure to comply with its provisions. *United States v. Jenison*, supra at 667. Congress left room for harmless errors. H.R.Rep.No.1076, *id.* at 1805; *United States v. Davis*, 546 F.2d at 589; *United States v. Evans*, 526 F.2d 701, 705 (5th Cir., 1976), *cert. denied*, 429 U.S. 818, 97 S.Ct. 62, 50 L.Ed.2d 78 (1976); *McGinnis v. M. I. Harris,*

*Inc.*, 486 F.Supp. 750, 754 (N.D.Tex., 1980) (civil case); *United States v. Armsbury*, 408 F.Supp. at 1143.

In order to determine whether there has been substantial noncompliance with the provisions of the Act, the alleged violations must be weighed against the goals of said statute. *United States v. Davis*, 546 F.2d at 589; *United States v. Evans*, 526 F.2d at 705–706; *United States v. Jenison*, supra, at 667. Such goals may be summarized as follows:

> "The major policy of the Act is that juries shall be 'selected at random from a fair cross section of the community.' 28 U.S.C. § 1861. Discrimination is prohibited in the selection process. *Id.* § 1862. Toward these ends, voter lists are the primary source of jurors' names, and the Act aims to determine disqualifications, excuses, exemptions and exclusions based solely on objective criteria." *United States v. Davis*, 546 F.2d at 589 (citations omitted).

It is alleged in the Report that some items were left unanswered in the jury qualification forms [9] of persons included in the qualified jury wheel, as follows: education (1.9%), marital status (5.9%), race (10.3%) and occupation (21.0%). (Report, p. 7).

Accepting for purposes of this Opinion the correctness of said data, it appears that "[c]ompletely accurate records were not kept in this case. But this breach of duty does not amount to a 'substantial failure' to comply with the provisions of the Jury Selection Act within the meaning of 1867(d)." *United States v. Armsbury*, 408 F.Supp. at 1143. In *Armsbury*, of 4,942 questionnaires returned, 503 had unanswered the questions relating to race. Of those 503, 350 were not qualified and the remaining 153, which were qualified, were entered in the qualified jury wheel. The *Armsbury* Court held that "[t]he inclusion of those 153 not classifiable on the basis of race within the quali-

fied jury wheel amounts to 'harmless error', not 'substantial failure.' " *Id.*

This Court finds that the omissions to answer some of the items in the returned questionnaires, as alleged herein by Defendants, did not affect the random nature or objectivity of the jury selection process.[10] Such omissions are therefore technical violations of the Act, harmless errors, but do not constitute substantial non-compliance with the Act. See *United States v. Davis*, 546 F.2d at 589; *United States v. Evans*, 526 at 706. Furthermore, if the information regarding education, marital status, race and occupation was *not* included in the jury forms in the percentages alleged by Defendants, it is obvious that said non-information could not have been the basis for invidious discrimination in the composition of the jury pool, at least as to those classifications and those jury forms. Defendants' second claim is therefore without merit.

Defendants allege in their third claim that persons of the working class or of lower socioeconomic status, the lesser educated, non-whites and young people, were systematically excluded and underrepresented in the jury pool.

The Sixth Amendment right to jury trial requires that petit juries be selected from a fairly representative cross-section of the community. *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690, 526–531 (1975). Congress incorporated this fair cross-section requirement into the Act. 28 U.S.C. Sec. 1861. See *Taylor* 419 U.S. at 529–530, 95 S.Ct. at 697–698.

> "In order to establish a prima facie violation of the fair cross-section requirement [of the Sixth Amendment], the defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number

---

9. Appended to this Opinion and Order is a model of the "Juror Qualification Questionnaire" used in this District.

10. In addition, we note that the questions as to education, marital status and occupation are routinely covered in the voir dire.

of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." *Duren v. Missouri*, 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979).

■ The same analysis applies to the fair cross section requirement of Section 1861. *United States v. Foxworth*, 599 F.2d at 3; *United States v. Test*, 550 F.2d 577, 585 (10th Cir., 1976); *United States v. White Lance*, 480 F.Supp. 920, 921 (D.S.D., 1979). See also *Taylor v. Louisiana*, 419 U.S. at 528–530, 95 S.Ct. at 696–697.

■ A criminal Defendant has standing to challenge exclusion or underrepresentation resulting in a violation of the fair cross section standard, whether or not he is a member of the class allegedly excluded or underrepresented. *Duren v. Missouri*, 439 U.S. at 359 n. 1, 99 S.Ct. 664, 666; *Taylor v. Louisiana*, 419 U.S. at 526, 95 S.Ct. 692, 42 L.Ed.2d 690; *Peters v. Kiff*, 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972); *United States v. Test*, 550 F.2d at 581 n. 3.

We therefore address Defendants' allegations of underrepresentation or exclusion of cognizable groups in the jury pool, applying the three-pronged test quoted above.

■ As to the "persons of the working class or of lower socioeconomic status" such classifications are too ambiguous and loose to support any finding of a distinct, identifiable class. See *Figueroa v. Com. of Puerto Rico*, 463 F.Supp. 1212, 1214 (D.P.R., 1979). In *United States v. Valentine*, 288 F.Supp. 957 (D.P.R., 1968) this Court rejected various proffered classifications (the urban working class, the coastal sugar plantation workers, and the "jibaros") because it found they "are based only on occupation, and take no account of other factors, such as actual income, personal history and family background." *Id.* at 974. See also *United States v. Kleifgen*, 557 F.2d 1293, 1296 n. 6 (9th Cir., 1977) ("unemployed" do not constitute cognizable group).

■ Defendants further allege underrepresentation of "non-whites." Race is clearly a cognizability factor; the individuals of a particular race have consistently been held to constitute a cognizable group. See, *e. g. Rose v. Mitchell*, 443 U.S. 545, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979) (Negroes); *Castaneda v. Partida*, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977) (Mexican-Americans); *Alexander v. Louisiana*, 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972) (negroes); *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965); *United States v. Brady*, 579 F.2d 1121, 1131 (9th Cir., 1978), *cert. denied*, 439 U.S. 1074, 99 S.Ct. 849, 59 L.Ed.2d 41 (1979) (Indians). Defendants have not shown, however, and we do not consider, that "non-whites" as such constitute a cognizable group; we are rather of the opinion that such term is a reference to several cognizable groups, e. g., Blacks, Orientals, Indians, etc. (See Appendix (jurors qualification questionnaire) item 11)). Cf. *United States v. Rodriguez*, 588 F.2d 1003, 1007 (5th Cir., 1979) (the Court found that appellant had failed to establish that the persons of "Latin origin" constitute a "single cognizable group rather than several—e. g. Cuban-Americans, Puerto Ricans, Argentine-Americans, Spanish-Americans, etc."). There is "simply no evidence upon which this Court could find that persons of such diverse [races as Blacks, Orientals, Indians and others] possess such similar interests that they constitute a cognizable group." *Id.* Furthermore, since Defendants have not established the existence of a separate identifiable class, their statistics hold less meaning. *Id.* at 1008. In addition, Defendants have made no showing or alleged any *facts*, that establish "systematic exclusion of non-whites in the qualified jury wheel."

The allegation that the young, or any age group constitute a cognizable group, has met little success in federal courts. See *Hamling v. United States*, 418 U.S. 87, 137–138, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974). See *e. g. United States v. Kleifgen*, 557 F.2d at 1296; *United States v. Potter*, 552 F.2d at 905; *United States v. Test*, 550 F.2d at 590–593; *United States v. Diggs*, 522 F.2d

1310, 1317 (D.C.Cir., 1975), *cert. denied sub nom. Floyd v. United States*, 429 U.S. 852, 97 S.Ct. 144, 50 L.Ed.2d 127 (1976); *United States v. Olson*, 473 F.2d 686, 688–689 (8th Cir., 1973), *cert. denied*, 412 U.S. 905, 93 S.Ct. 2291, 36 L.Ed.2d 970 (1973). Allegations that the less educated constitute a cognizable group have also been rejected. See *United States v. Kleifgen*, 557 F.2d at 1296; *United States v. Potter*, 552 F.2d at 905. In *United States v. Butera*, 420 F.2d 564 (1st Cir., 1970), on the other hand, the young and the less educated were held to constitute cognizable groups. We need not, however, delve into the cognizability question.

 We have examined Defendants' statistics, which show that the young (which are defined in the Report as the persons of ages between 18 and 29) are underrepresented in the qualified jury wheel by 6.2% as compared to their number in the 1970 census. (Report, pp. 12–13). We find that such percentage difference is not unreasonable and that it falls short of the requirement of the prima facie test. As to the less educated, it appears that Defendants' numbers are based on the numbers of the 1970 census (Report, pp. 9–10), that is, on the total population of Puerto Rico (in 1970), without taking into account the eligibility requirements of the Act, which include *inter alia*, age, residency and English language literacy and speaking proficiency. See 28 U.S.C. 1865; *United States v. Ramos Colón*, 415 F.Supp. 459; *United States v. Valentine*, 288 F.Supp. at 970. Defendants have not shown substantial underrepresentation of the *eligible* portion of the less educated, nor have they demonstrated that such portion is systematically excluded from the qualified jury wheel.

This Court is therefore of the opinion that Defendants' allegations as to the exclusion or underrepresentation of cognizable groups fail to establish a prima facie case.

 Defendants' next claim relates to the constitutionality of the English lan-guage proficiency requirement in order to serve as a juror of this Court.

Congress has statutorily provided that all pleadings and proceedings in this Court shall be conducted in the English language. 48 U.S.C. Sec. 864. See *Bordas & Company v. Pizarro Serrano*, 314 F.2d 291 (1st Cir., 1963). The constitutional validity of such requirement has been repeatedly upheld. *United States v. De Jesús Boria*, 518 F.2d 368 (1st Cir., 1975); *United States v. Ramos Colón*, 415 F.Supp. at 463–466; *United States v. Valentine*, 288 F.Supp. at 962–968.

The Act provides that a person will not be qualified to serve as juror if he

" . . .

"(2) is unable to read, write and understand the English language with a degree of proficiency sufficient to fill out satisfactorily the juror qualification form;

"(3) is unable to speak the English language; . . . . . " 28 U.S.C. Sec. 1865(b)(2) and (3).

These statutory provisions are constitutional. *United States v. Test*, 550 F.2d at 594; *United States v. Ramos Colón*, 415 F.Supp. 459; *United States v. Armsbury*, 408 F.Supp. at 1134.

"Naturally, requiring that jurors in Puerto Rico meet an English language requirement is part of making the United States District Court for the District of Puerto Rico 'a viable part of the federal judicial system' [quoted from *Valentine*, 288 F.Supp. at 964], since it can hardly be disputed, . . . that jurors have to understand the proceedings held before them and of which they constitute an indispensable and integral part." *United States v. Ramos Colón*, 415 F.Supp. at 465.

Defendants' allegations are "grounded on the basic fallacy that the Constitution requires that juries be drawn from a cross-section of the *total* population without the imposition of any qualifications, a contention which at this late date is spurious." *Id.* at 464 (citations omitted).

In support of their constitutional challenge to the English language proficiency requirement, Defendants stress that presently there is pending before Congress a bill that would purportedly allow the use of the Spanish language in this Court. The fact that Congress may be considering such a bill, which has not yet been enacted, does not (as Defendants purport) in any way detract or erode from the validity and present effectiveness of the above-cited statutes and caselaw.

The effect that such a bill or any other one, if and when enacted into law, would have on the jury selection process of this District, is a contingent and speculative issue which need not be considered at this time.

In their last two claims Defendants allege in substance that a large number of persons who were not sufficiently proficient in the English language, were qualified for jury service in violation of the provisions of 28 U.S.C. Sec. 1865(b)(2) and (3). This is a *conclusory* allegation and is unsupported by any evidence or *factual* assertion. Defendants merely allege that if an investigation is made, it will establish that such violations to the statute have taken place. They have not, however, proffered a factual basis for such a conclusion. It is in any event immaterial. See *United States v. Ramos Colón*, supra.

Rather, an examination of the caselaw will show that "[i]n Puerto Rico, where the customary language is Spanish, not English, prospective jurors are routinely examined by a district judge, in English, with an eye to their proficiency in spoken English, before being admitted to the venire.... This is done after they have submitted their juror qualification forms and have been provisionally approved by the Clerk." *Thornburg v. United States*, 574 F.2d 33, 35 (1st Cir., 1978) (citations omitted). See *United States v. Cepeda Penes*, 577 F.2d 754, 758–759 (1st Cir., 1978); *United States v. Hayes*, 479 F.Supp. 901, 913–914 (D.P.R. 1979); *United States v. Cortés*, 440 F.Supp. 689 (D.P.R., 1977); *United States v. Ramos Colón*, 415 F.Supp. at 466–467; *United States v. Valentine*, 288 F.Supp. at 965, 968–969.

As to the case at bar, a review of the transcript of the voir dire clearly shows that the prospective jurors were extensively examined by the Court in order to, *inter alia*, ascertain their English language proficiency as required by the Act. The transcript also reflects that several prospective jurors were excused because of their inability to sufficiently understand the English language. (See Tr. August 24, 1978, pp. 27–28, 58–59, 264; Tr. August 25, 1978, pp. 324–328, 335–336).

■ Furthermore, to the extent Defendants' allegations refer to the English language proficiency of the particular jurors that served in this case, since Defendants did not raise their objections during the trial, they are precluded from making such a challenge now. *United States v. Gates*, 557 F.2d 1086, 1088 (5th Cir., 1977), *cert. denied*, 434 U.S. 1017, 98 S.Ct. 737, 54 L.Ed.2d 763 (1978).

In view of the foregoing, Defendants' Motion is DENIED.

It is hereby ORDERED that Defendants, their attorneys and any "qualified personnel" appointed pursuant to our Order of June 23, 1980, are forbidden to and shall refrain from any further communication with jurors or prospective jurors of this District, and shall, within the next ten days, comply with the provisions of our Order of June 13, 1980 related to the return of documents to the Clerk and the filing of a certification thereof. It is further ORDERED that said provisions of our June 13, 1980 Order extend to include the questionnaires sent by Drs. Torres and Toro to prospective jurors (see Defendants' Memorandum of Law, p. 14) and any copies or reproductions thereof, all of which shall be returned to the Clerk together with a certification as provided in said Order, within the ten days granted herein.

IT IS SO ORDERED.

## APPENDIX

---

**FEDERAL COURT** **JUROR QUALIFICATION QUESTIONNAIRE** AO-178(1/77)

PLEASE READ LETTER ON OTHER SIDE • PRINT OR TYPE YOUR ANSWERS

**①** IF YOUR NAME AND PERMANENT ADDRESS ARE NOT CORRECT, PLEASE CHECK ☐ AND SHOW CORRECTIONS ON REVERSE SIDE.

TO

**②** RETURN THIS FORM IN THE ENCLOSED ENVELOPE TO:
**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**
**Office of the Clerk**
**P.O. BOX 3671**
**SAN JUAN, PUERTO RICO 00904**

**③** COUNTY YOU NOW LIVE IN ⟶

**④** HAVE YOU LIVED FOR THE FULL YEAR IN
• THIS STATE ☐ YES ☐ NO
• THE SAME COUNTY ☐ YES ☐ NO

⟶ IF "NO" GIVE NAMES OF OTHER COUNTIES OR STATES IN WHICH YOU LIVED DURING THE YEAR, AND SHOW DATES, (USE REVERSE IF NECESSARY.)

**⑤** HOME _____
PHONE { WORK _____

**A.** **IDENTIFICATION**

**⑥** BIRTH DATE | month | day | year **⑦** AGE **⑧** U.S. CITIZEN ☐ YES ☐ NO

**⑨** MR ☐ MRS. ☐ MISS ☐ **⑩** ☐ MARRIED ☐ SINGLE ☐ WIDOWED ☐ DIVORCED/SEPARATED

**⑪** PLEASE INDICATE YOUR RACE ON THE FOLLOWING LIST

FEDERAL LAW REQUIRES YOU AS A PROSPECTIVE JUROR TO INDICATE YOUR RACE. THIS ANSWER IS REQUIRED SOLELY TO AVOID DISCRIMINATION IN JUROR SELECTION AND HAS ABSOLUTELY NO BEARING ON QUALIFICATIONS FOR JURY SERVICE. BY ANSWERING THIS QUESTION YOU HELP THE FEDERAL COURT CHECK AND OBSERVE THE JUROR SELECTION PROCESS SO THAT DISCRIMINATION CANNOT OCCUR IN THIS WAY. THE FEDERAL COURTS CAN FULFILL THE POLICY OF THE UNITED STATES WHICH IS TO PROVIDE JURORS WHO ARE RANDOMLY SELECTED FROM A FAIR CROSS SECTION OF THE COMMUNITY

☐ INDIAN (American)
☐ ORIENTAL
☐ BLACK (or Negro)
☐ WHITE
☐ OTHER (Specify)

**B.** **OCCUPATION**

Federal Law requires that you answer No. 12, 13, 14, & 15 so that the Federal Courts may determine promptly whether you fall within an excuse or exemption category (See "E" & "F")

**⑫** ARE YOU NOW EMPLOYED? ☐ YES ☐ NO

**⑬** YOUR EMPLOYER'S NAME

**⑭** YOUR USUAL OCCUPATION, TRADE OR BUSINESS

**⑮** BUSINESS ADDRESS OR EMPLOYER'S ADDRESS

Street

City State

**C.** **EDUCATION AND HEALTH**

**⑯** CAN YOU...
• READ ☐ YES ☐ NO
• WRITE ☐ YES ☐ NO
• SPEAK AND UNDERSTAND ☐ YES ☐ NO
} THE ENGLISH LANGUAGE?

**⑰** SHOW THE EXTENT OF YOUR EDUCATION BY GIVING THE NUMBER OF FULL YEARS COMPLETED
{ In Grade School ___ In High School ___ Trade/Vocational School ___ Above High School ___

**⑱** DO YOU HAVE ANY PHYSICAL OR MENTAL INFIRMITY ☐ YES ☐ NO IMPAIRING YOUR CAPACITY TO SERVE AS JUROR?

IF "YES" PLEASE EXPLAIN (& attach evidence of your infirmity)

**D.** **CRIMINAL RECORD**

**⑲** WERE YOU EVER CONVICTED OF A STATE OR FEDERAL CRIME PUNISHABLE BY IMPRISONMENT FOR MORE THAN ONE YEAR? YES NO

**⑳** WERE YOUR CIVIL RIGHTS RESTORED? YES NO

**㉑** ARE ANY CHARGES PENDING AGAINST YOU FOR VIOLATION OF A STATE OR FEDERAL CRIME PUNISHABLE BY IMPRISONMENT FOR MORE THAN ONE YEAR? ☐ YES ☐ NO

**E.** **EXEMPTIONS**

**㉒** CHECK IF YOU ARE EMPLOYED ON A FULL-TIME BASIS AS ONE OF THESE
{
☐ PUBLIC OFFICIAL OF THE UNITED STATES, STATE, OR LOCAL GOVERNMENT WHO IS EITHER ELECTED TO PUBLIC OFFICE OR DIRECTLY APPOINTED BY ONE ELECTED TO OFFICE.
☐ MEMBER OF ANY GOVERNMENTAL POLICE OR REGULAR FIRE DEPT. (NOT INCLUDING VOLUNTEER OR COMMERCIAL DEPTS.)
☐ MEMBER IN ACTIVE SERVICE OF THE ARMED FORCES OF THE UNITED STATES.

**F.** **GROUNDS FOR REQUESTING EXCUSE**

You **MAY** be excused by the court from service as a juror if you are within a category shown below. If you request to be excused for that reason, mark the category which applies to you. HOWEVER, IF YOU WISH TO SERVE DO NOT MARK YOUR CATEGORY.

I am {
1) ____ 70 years of age or over
2) ____ An actively engaged minister of religion or member of a religious order of any denomination.
3) ____ An actively practicing attorney, physician, dentist, or registered nurse
4) ____ Actively teaching in public, parochial or private school or college. (Give name, address and term of school below)
5) ____ A person who has served as a grand or petit juror in state or federal court within the last two years. (Give name of court and dates you served below)

---

**REMEMBER, ALL CITIZENS HAVE AN OBLIGATION TO SERVE AS JURORS WHEN CALLED UPON**

I SWEAR AND AFFIRM THAT ALL ANSWERS ARE TRUE TO THE BEST OF MY KNOWLEDGE & BELIEF

SIGN HERE ▶ _____ DATE SIGNED _____

YOU MUST ANSWER ALL QUESTIONS THAT APPLY TO YOU PLEASE MAKE SURE YOU HAVE DONE SO

If another person filled out the above form, please indicate your name, address and reason why on other side of form.

