Cabrera FIGUEROA, Miguel, Parrilla Tirado, Luis E. on behalf of themselves and all other similarly situated, Plaintiffs,

v.

The COMMONWEALTH OF PUERTO RICO et als., Defendants.

Civ.No. 79–259.

United States District Court, D. Puerto Rico.

Jan. 19, 1979.

Luis E. Parrilla, Hato Rey, P. R., Pedro J. Varela & Miguel A. Cabrera, Hato Rey, P. R., for plaintiffs.

Department of Justice, for defendant.

## DECISION AND ORDER

TORRUELLA, District Judge.

The complaint presents a collateral attack on the constitutional validity of the jury selection process utilized in the Commonwealth Courts, specifically the "fair cross section requirement" of the Sixth Amendment. The complaint is presented at a time when Commonwealth criminal proceedings are pending and trial is scheduled to commence on January 22, 1979. Moreover, it raises issues that have already been submitted, litigated and adjudicated by the Commonwealth Courts.

[1] It is by now clear that *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), under "vital considerations of comity", prohibits a federal court from enjoining pending state prosecutions except under the most extraordinary circumstances. Such circumstances include where a petitioner has alleged and made a sufficient showing of "bad faith, harassment, or other unusual circumstance that would call for equitable relief." Id. at p. 54, 91 S.Ct. at 755. No such allegations spring forth from the complaint; its aim and thrust lie definitely elsewhere.

There is no question that the constitutional issue raised here was presented to [Complaint par. 21, see also Appendix p. 1–3), and adjudicated by, the Superior Court (Compl. par. 23 (sic)).[1] Indeed the very allegations of the Complaint strongly imply and suggest that a presentation of Plaintiffs' claims on the merits would consist of identical "oral and documentary evidence to support their jury composition challenge" (par 23 (sic) a–e, and Appendix references; par. 23 a–c, and Appendix references; and par. 24, and Appendix references).[2] While the First Circuit has not adopted the preclusion rule embodied in the general principles of res judicata—between Commonwealth decisions and subsequent federal constitutional claims—in the criminal context such as the case at bar, it has accorded "collateral estoppel effect to those claims '*actually* litigated and decided at the state criminal trial.'" *Fernández v. Trias Monge*, 586 F.2d 848 (C.A. 1, 1978) (emphasis in original), citing *Maynard v. Wooley*, 406 F.Supp. 1381, 1385 n. 6 (three judge court), aff'd 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752. Put simply, comity and collateral estoppel preclude this Court, at this juncture, from entertaining the constitutional claims placed before it.

---

1. In normal sequential order said paragraph should be listed as par. 22.

2. Plaintiffs herein freely and without reservation submitted all their federal claims for adjudication by the Superior Court, see: Plaintiffs' Motion of August 24, 1978, pars. 3, 5 and request for relief (g). Exh. 1. See *England v. Louisiana Bd. of Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). It is crystal clear from the Superior Court's decision that these were ruled upon.

■ Our denial of injunctive relief is also predicated on our holding that there is no immediate irreparable damage coupled with a likelihood to succeed on the merits with respect to the claims advanced. Plaintiffs' claim of violation of the "fair cross section" representation requirement is founded on the allegation that certain percentage underrepresentation with respect to certain categories or classification of possible jury members constitutes a sixth amendment deprivation.

"In order to establish a prima facie violation[3] of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." *Duren v. Missouri*, —— U.S. ——, ——, 99 S.Ct. 664, 668, 58 L.Ed.2d —— (1979).

Plaintiffs characterize the percentage of representation of certain groups to be violative of the cross section requirement, to wit:

| Group | Underrepresentation claimed[4] |
|---|---|
| Women | 17% |
| lesser educated | 30% |
| working class | 50% |
| age: under 30 | 22% |
| under 40 | 20% |

Assuming for purposes of this analysis that we accepted these material allegations as true, and according to them their maximum weight, it would indeed strain credulity to accept that Plaintiffs have put forth a prima facie showing.

First, as to the groups involved we seriously doubt that the lesser educated, working class (as ambiguously used by Plaintiff) or age categories are such "distinctive"

groups as would spell out a violation under the "prima facie showing" test. "The first step is to establish that the group is one that is a recognizable, distinct class, singled out for different treatment under the laws, as written or as applied." *Castaneda v. Partida*, 430 U.S. 482, 494, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498 (1976). Courts have repeatedly rejected the contentions that age categorizations constitute identifiable classes within the community as a distinct group within the fair representation standard. See: *U. S. v. Ross*, 468 F.2d 1213 (C.A.9, 1972) n. 3:

"This reluctance is justified in light of the fact that the parameters of such a group are difficult to ascertain, as evidenced by the widely varying ages which have been used to define it, and that its membership and their values are constantly in flux. There appears to be no factor other than age which defines this group, and we can perceive no reason to arbitrarily single out a narrow group of 'young persons' as opposed to 'middle-aged' or 'old' persons for purposes of jury duty." *Id.* at p. 1217.

In light of the ambiguity of the age class defined by Plaintiff (under 40, under 30) we find this reasoning persuasive and controlling.

In this same vein, and under this same reasoning, categories of the lesser educated and the working class would also prove too ambiguous to support any finding of an identifiable class. The working class is divided into blue collar, white collar, and agricultural workers. Widely varying accepted modes of labeling one type of employment white collar or blue collar make this type of grouping not one readily identifiable. No allegation in the complaint or otherwise evinces that either blue collar or white collar have been "singled out for different treatment under the laws, as written or applied."

---

3. Only a "prima facie showing" of the cross section requirement would compel the state to bear its burden of justifying this infringement by showing an attainment of a fair cross sec-

tion to be incompatible with significant state interest. *Duren*, supra, p. ——, 99 S.Ct. 664.

4. Plaintiffs base percentage on population.

Classifications based on the lesser educated vis-a-vis the better educated also evince faulty reasoning.

■ Only Plaintiff's grouping of women would survive the first part of the "prima facie test." Women are "sufficiently numerous and distinct from men" to constitute a "distinctive group." *Taylor v. Louisiana*, 419 U.S. 522, 531, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). However, affording Plaintiffs' material allegations their maximum weight we cannot find that the representation of this distinct group is not fair and reasonable in relation to the number of persons in the community, or that the underrepresentation is due to systematic exclusion of this group. First, from a purely statistical viewpoint, the percentage differentials do not demonstrate unreasonableness. Plaintiff claims that women are underrepresented by nearly 17%. This figure falls far short of the mathematical disparities that have been rejected by the Supreme Court when examining population based differentials. For example in *Turner v. Fouche*, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970) the difference was over 40%; in *Duren v. Missouri*, supra, the difference was 39.5%; in *Taylor v. Louisiana*, supra the difference was 43%; and in *Castaneda v. Partida*, supra, the difference was 40.1%. The figure presented here by Plaintiff is less than nearly half of the lowest figure above mentioned. Even without further inquiry into why less women than men appear on the Commonwealth jury list, we find that the number that do appear is not unreasonable.

No prima facie case has been advanced by Plaintiffs.

Much is made by Plaintiffs in their allegations of the fact that the Superior Court found it necessary to dismiss one jury commissioner and those prospective jurors listed by him. The obvious response to said allegation is that it is demonstrative of the fact that Plaintiffs were afforded full consideration of claims and granted the applicable relief where justified. It is such relief they sought and such relief was granted. The right of cross representation of juries compels no more. See, *U. S. v. Ramos Colón*, 415 F.Supp. 459 (D.P.R.1976). "The Defendants' right is a neutral jury. He has no constitutional right to friends on the jury." *Fay v. New York*, 332 U.S. 261, 288–289, 67 S.Ct. 1613, 1628, 91 L.Ed. 2043 (1946).

It is apparent that the filing of this case on the eve of the Commonwealth's criminal trial is not a fortuitous coincidence.

This action is dismissed for lack of jurisdiction, *Younger v. Harris*, supra, and collateral estoppel, *Fernández v. Trías Monge*, supra.

Costs are granted to Defendants.

IT IS SO ORDERED.