**UNITED STATES of America, Appellee,**

v.

**Harold LYNCH, Defendant, Appellant.**

**No. 85–1599.**

United States Court of Appeals, First Circuit.

Argued April 7, 1986.

Decided June 4, 1986.

**270**

prevent other Union members from exercising their rights of speech and assembly within the Union.

In the summer of 1983, two Union members, Barry Finn and Thomas Piscatelli, violated Union rules by working for a non-union roofing company. Appellant Lynch, the president of the Union, filed charges with the Union against the two men. Piscatelli then filed a countercharge against Lynch, claiming that Lynch had been "grossly inefficient in the performance of his duties," and that Piscatelli had "suffered reprisals as a result of [his] involvement in both union elections and union meetings."

On September 7, 1983, Finn and Piscatelli went to the Union hall to testify concerning Lynch's charges against them and Piscatelli's countercharge against Lynch. While they were waiting for the proceedings to begin, Lynch made two threatening comments to them. Both Finn and Piscatelli then gave testimony on Lynch's charges, and returned to the waiting room. After the hearing on Lynch's charges ended, Piscatelli was summoned back into the hearing room to testify concerning his charges against Lynch. Lynch then approached Finn, who was now alone in the waiting room, and punched him in the face, breaking Finn's nose. Finn got up from the floor, called the police, and went into the hearing room to describe what had just occurred. At that point, Piscatelli, afraid he and Finn were going to "get our heads beat in," stopped presenting his charges, and waited for the police to arrive so they could leave safely. While they waited, Lynch made another threatening comment to Piscatelli.

Lynch was convicted of two counts of using violence and threats of violence to prevent Union members from exercising their rights within the Union. 29 U.S.C. §§ 411(a)(2), 530 (1982).[1] He filed this appeal claiming that (1) his indictment was invalid because it was handed down by a grand jury characterized by an underrepre-

Thomas E. Dwyer, Jr. with whom Maurice T. Cunningham and Dwyer & Murray, Boston, Mass., were on brief, for defendant, appellant.

William C. Bryson, Dept. of Justice, Washington, D.C., with whom William F. Weld, U.S. Atty., Boston, Mass., was on brief, for appellee.

Before CAMPBELL, Chief Judge, BOWNES and TORRUELLA, Circuit Judges.

LEVIN H. CAMPBELL, Chief Judge.

Harold Lynch, the former president of Local 33 of the United Union of Roofers, Waterproofers and Allied Workers ("the Union"), appeals from his convictions in the district court of the misdemeanor offense of using violence and threats of violence to

---

1. One count was for intimidating Finn, and the other count was for intimidating Piscatelli.

sentation of young adults, and (2) there was insufficient evidence to support his conviction.

Lynch's first argument on appeal fails as a result of our recent en banc decision in *Barber v. Ponte*, 772 F.2d 982 (1st Cir. 1985) (en banc). In *Barber* we held that young adults were not a "cognizable group" under the standard set forth by the Supreme Court in *Duren v. Missouri*, 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979), such that a showing of mere statistical underrepresentation, without evidence of actual discriminatory or exclusionary practices, would indicate a prima facie violation of the sixth amendment fair cross-section requirement.

Lynch maintains that our *Barber* decision does not apply to this case because he, unlike the defendant in *Barber*, presented evidence on the cognizability issue. The evidence presented by Lynch, based on the record in an earlier case, consisted of expert testimony that young adults aged 18 to 34 constitute a distinctive group because they grew up in a period characterized by the "nuclear age," the "television era," the "suburbanization of America," and the "question[ing of] authority" by young people. The expert added that sociologists and other social scientists often consider persons between 18 and 34 to be in the "young" age category, and that advertisers and the marketing industry regard that group as the "youth culture" market.

■ None of this evidence, however, undercuts our holding in *Barber* that persons 18 to 34 do not sufficiently blend into one "cognizable group" so as to permit the making of a prima facie case of juror discrimination simply by showing that the venire underrepresents persons falling within the broad spectrum of those ages. To be sure, people change in many ways as they grow older, and so, too, do conditions in our nation, and in the world, change over time. But we concluded in *Barber* that selecting out, more or less arbitrarily, people between certain ages, and calling them "young adults" resulted in too amorphous and fluid a grouping to constitute a "cognizable group" as that term has been used for purposes of establishing prima facie juror discrimination through statistics alone.[2]

We emphasized in *Barber* the lack of internal coherence within such a purported group:

> [W]hat is the evidence that the attitudes and thinking of, say, 30 year olds have more in common with 18 year olds than they do with 40 year olds, or for that matter, going to the other end of the scale, that 18 year olds have more in common with 28 year olds than with 16 year olds? How do we know there should not be two groups, 18 to 28 and 28 to 35, or three, or four groups encompassing other boundaries? ... Is not a "distinctive" group, by definition, one whose membership is reasonably set apart from others by clear lines of demarcation?

*Barber*, 772 F.2d at 998. The evidence presented by Lynch's expert does little to address this issue, even though it is central to the question of the cognizability of a group composed of everyone between certain arbitrarily selected ages. Nor does Lynch's evidence address other aspects of our reasoning in *Barber*. Because Lynch failed to show the exclusion of a cognizable group, we need not address his figures regarding the purported underrepresenta-

**2.** We, of course, stated in *Barber* that it would be illegal to *exclude* from jury service persons within such age groupings (as it would be to exclude any other persons except those properly excludable). The question here is not whether it is proper to exclude "young people"—it is not—but whether a prima facie case of illegality is made simply by showing, without more, that there was a statistical imbalance in the venire that disfavors this particular alleged group. As we pointed out in *Barber*, if this grouping qualifies as a "cognizable group" for purposes of *Duren v. Missouri* analysis, it is hard to see what grouping will not similarly qualify. The result could soon be that any defendant showing that the venire deviated statistically from a perfect community cross-section would have established a prima facie violation of the sixth amendment. *See Barber*, 772 F.2d at 999; *Anaya v. Hansen*, 781 F.2d 1, 6–7 (1st Cir.1986).

tion of the members of the alleged group in the grand jury that indicted him.[3]

■ Lynch next contends that the evidence was insufficient to support the verdicts against him. This claim can only be characterized as frivolous. A jury could easily have found that Lynch made threatening comments to Finn and Piscatelli prior to their testimony at the Union hearings, and that the purpose of the comments was to intimidate them, thereby preventing them from exercising their Union rights. This alone would have been sufficient to support Lynch's convictions on both counts.

Further, we have no doubt that a jury could also find the punch to Finn, standing by itself, enough to support both convictions. The punch actually succeeded in stopping Piscatelli from presenting his charges against Lynch, as Piscatelli went no further after Finn staggered into the hearing room. And, while Finn had already completed his testimony at the time he was assaulted, there is no indication that Lynch knew this was the case. Even if Lynch did know that Finn had no further plans to testify, however, it is clear that Lynch could still have been convicted of trying to intimidate Finn to keep him from exercising his rights. As the Eighth Circuit has stated,

> The exercise of a right may be frustrated as much by retaliation as by prevention or interruption. It is obvious that acts of violence immediately following or otherwise directly relating to an activity stultify the ensuing repetition of that activity by an intimidated victim and by others as well.

*United States v. Kelley,* 545 F.2d 619, 622 (8th Cir.1976), *cert. denied,* 430 U.S. 933, 97 S.Ct. 1555, 51 L.Ed.2d 777 (1977).

*Affirmed.*

BOWNES, Circuit Judge (concurring).

I concur in the result. I accept *Barber v. Ponte* as binding, but expressly disasso-

ciate myself from perpetuating the myth that youth does not exist for jury purposes.

---

**3.** It was not error for the district court to deny Lynch's motion for a one-hour hearing on his motion to dismiss the indictment, especially given the fact that defendant never indicated the nature of the evidence he intended to present at such a hearing.