UNITED UNION OF ROOFERS, WAT-
ERPROOFERS AND ALLIED WORK-
ERS, UNION NO. 33, Plaintiffs, Appel-
lants,

v.

Edwin MEESE, Attorney General of
the United States of America, et al.,
Defendants, Appellees.

No. 86–1945.

United States Court of Appeals,
First Circuit.

Argued Feb. 3, 1987.

Decided June 29, 1987.

Michael A. Feinberg with whom Aaron D. Krakow and Feinberg & Feld, P.C., were on brief for plaintiffs, appellants.

Laurence Gold, David Silberman, Laurence J. Cohen, Robert M. Weinberg, Mark D. Schneider, on brief for American Federation of Labor and Congress of Indus. Organizations, The Building and Const. Trades Dept., AFL–CIO, The Massachusetts AFL–CIO, and the Massachusetts State Building and Const. Trades Council, amici curiae.

Elisa B. Vela, Dept. of Justice, with whom Richard K. Willard, Asst. Atty. Gen., Robert S. Mueller, III, U.S. Atty., John F. Cordes, and Gerald Toner, U.S. Dept. of Justice, were on brief for defendants, appellees.

Before CAMPBELL, Chief Judge, BREYER and SELYA, Circuit Judges.

BREYER, Circuit Judge.

A federal statute disqualifies from holding union office persons convicted of any one of a set of specifically listed crimes. The list includes such serious crimes as murder, bribery, embezzlement, arson, and (relevant here) "assault which inflicts grievous bodily injury." 29 U.S.C. § 504 (Supp. II 1984). In 1983, Harold Lynch, the business manager of the Roofers, Waterproofers, and Allied Workers Local Union No. 33, attended a Union Executive Board meeting considering various charges and countercharges leveled between Lynch and two other union members. During the meeting, Lynch threatened the other two members and punched one of them in the face, breaking his nose. The federal government subsequently indicted and convicted Lynch under a labor statute that forbids "the use of force or violence, or threat of the use of force or violence" to intimidate union members in the exercise of their rights. 29 U.S.C. § 530 (1982); *see United States v. Lynch,* 792 F.2d 269 (1st Cir. 1986). The federal criminal code classifies this crime (which carries a maximum prison term of one year) as a "misdemeanor." 18 U.S.C. § 1 (1982).

The Department of Justice subsequently told the Union that, in its view, Lynch's conviction under the "intimidation" statute was "equivalent to" a conviction for an "assault which inflicts grievous bodily inju-

ry," and that Lynch's conviction therefore came within the scope of the "disqualification" statute. The Union disagreed. Because it wished to keep Lynch as an officer, the Union brought this action seeking a declaration that the "disqualification" statute does not apply. The district court decided in favor of the government. We believe that the district court is correct.

## I

In order to understand the legal issues in this case, one must keep in mind the relevant language of two different labor statutes. The first of these, the "disqualification" statute, says:

> (a) *No person who ... has been convicted of ...* robbery, bribery, extortion, embezzlement, grand larceny, burglary, arson, violation of narcotics laws, murder, rape, assault with intent to kill, *assault which inflicts grievous bodily injury,* or a violation of [Title II or III of the Labor-Management Reporting and Disclosure Act], any felony involving abuse or misuse of such person's position or employment in a labor organization or employee benefit plan to seek or obtain an illegal gain at the expense of the members of the labor organization or the beneficiaries of the employee benefit plan, or conspiracy to commit any such crimes or attempt to commit any such crimes, or a crime in which any of the foregoing crimes is an element, *shall serve* or be permitted to serve—

> . . . . .

> (2) *as* an officer, director, trustee, member of any executive board or similar governing body, *business agent,* manager, organizer, employee, *or representative in any capacity of any labor organization* [for thirteen years or until one of several specified conditions occurs].

> . . . . .

> (b) *Any person who willfully violates this section shall be fined not more*

*than $10,000 or imprisoned* for not more than five years, or both.

29 U.S.C. § 504.

The "intimidation" statute which Lynch violated is entitled "Deprivation of Rights by Violence." It says:

> *It shall be unlawful for any person through the use of force or violence, or threat of the use of force or violence, to restrain, coerce, or intimidate,* or attempt to restrain, coerce, or intimidate *any member of a labor organization for the purpose of interfering with* or preventing *the exercise of any right* to which he is entitled understand the provisions of this chapter. *Any person who willfully violates this section shall be* fined not more than $1,000 or *imprisoned for not more than one year,* or both.

29 U.S.C. § 530 (we have emphasized the directly relevant language in both statutes). The basic question in this case is whether a person convicted under the second statute can be disqualified under the first.

It is important to understand that the nature of Lynch's actual *conduct* is not a significant subject of dispute. The conduct in question could in principle amount to an "assault which inflicts grievous bodily injury." A punch in the face that breaks the victim's nose, requiring hospitalization and surgery, is not like an ordinary punch thrown in anger, say, on a picket line. Rather, the punch amounted to an "assault" and a "battery" which led to an injury serious enough to count as "grievous" under various cases that seek to distinguish more serious, from less serious, bodily harm. *Compare People v. Finn,* 87 N.Y.S.2d 798, 275 A.D. 65 (1949) (extensive facial bruises and swelling may be "grievous bodily harm") *and State v. Linton,* 36 Wash.2d 67, 216 P.2d 761, 778 (1950) ("grievous bodily harm" includes "injury calculated to interfere with health or comfort" and "need not be ... injury of a permanent character") *with State v. Sanders,* 223 Kan. 550, 575 P.2d 533, 535 (1978) (great bodily harm "does not include mere bruises, which are likely to be sustained in

simple battery") *and State v. Miles,* 77 Wash.2d 593, 464 P.2d 723, 727–28 (1970) (cut lip is not "grievous bodily harm"); *cf.* Model Penal Code § 210.0(3) (1980) (defining "serious bodily injury" as including "protracted ... impairment of the function of any bodily member or organ"). The Union has not disputed this point; thus, if the government had initially convicted Lynch under an "aggravated assault" statute (one which said, for example, that "it is a felony to commit an assault which inflicts serious bodily injury"), the Union apparently would concede that the disqualification statute applies. The legal issues in this case arise because the government *did not convict* Lynch of violating an "aggravated assault" statute. Rather, it convicted Lynch of violating an "intimidation" statute. And that fact, says the Union, makes all the difference.

The Union points to three specific features of the "intimidation" statute that it says make a significant legal difference. First, the language of the "intimidation" statute does not refer directly to aggravated assault. Second, the "intimidation" crime is a misdemeanor, not a felony. Third, the government could have convicted Lynch of intimidating through "force or violence" without proving that the victim's injury was serious. The Union believes each of these differences sufficient to take Lynch's conviction out of the "disqualification" statute's language, "assault which inflicts grievous bodily injury," and hence outside the scope of the disqualification statute. We shall consider each of these arguments in turn.

## II

First, does it make a critical difference that the "intimidation" statute under which Lynch was convicted aims not at "assault which inflicts grievous bodily injury," but rather (as its title says) at "deprivation of rights by violence"?

■ We do not think that this difference is significant. For one thing, the simple fact that the "intimidation" statute does not use the words "assault which inflicts grievous bodily injury" or their direct equivalent cannot, in and of itself, make a difference, for Congress could not have meant to include on its "disqualification" list only convictions under statutes that use the list's exact words. Congress wanted to disqualify from union office persons convicted of "serious" crimes, *see* 105 Cong. Rec. 6410 (1959) (statement of Sen. Ervin); *id.* at 6554 (statement of Sen. McClellan); S.Rep. No. 187, 86th Cong., 1st Sess., *reprinted in* 1959 U.S.Code Cong. & Admin. News 2318, 2329; it intended to create "strong barriers against the control of unions by unreformed convicted thieves, racketeers, and thugs," 105 Cong.Rec. at 7021 (statement of Sen. Kennedy); *see also id.* at A6573 (statement of Rep. Brademas). To interpret the disqualification list, and in particular the common law crimes mentioned there, other than as a list of generic descriptions would undercut this basic purpose, for, as a comparison of a few state and federal "bribery" provisions illustrates, statutes often use different language to forbid different forms of the same type of conduct. *See. e.g.,* 18 U.S.C. § 201 (1982) (influencing public official or witness); 18 U.S.C. § 212 (1982) (gift to bank examiner); 29 U.S.C. § 186(a) (1982) (illegal transaction with labor representative); Mass.Gen.Laws ch. 268, § 13B (1984) (influencing witness); N.Y. Penal Law § 215.00 (McKinney 1975) (similar). Thus, the federal courts have uniformly held that the list of common law crimes includes convictions under statutes that *substantially* cover the conduct listed in the disqualification statute, regardless of the precise statutory langauge. *E.g., Illario v. Frawley,* 426 F.Supp. 1132 (D.N.J.1977) (holding conviction under New Jersey law for obtaining money by false pretenses to be "grand larceny" under § 504); *Hodgson v. Chain Service Restaurant, Luncheonette and Soda Fountain Employees Union, Local 11,* 355 F.Supp. 180, 182–86 (S.D. N.Y.1973) (holding conviction of labor leader for accepting illegal payments from employers under 29 U.S.C. § 186 to be "bribery" under § 504); *Lippi v. Thomas,* 298 F.Supp. 242, 246–49 (M.D.Pa.1969) (holding conviction for willful misapplication of bank funds under 18 U.S.C. § 656 (1982) to be "grand larceny" under § 504). The "intimi-

dation" statute's language, "use of force or violence," seems to us substantially to cover an aggravated assault.

■ For similar reasons, we do not believe that it matters that the "intimidation" statute forbids not only actual "use of force or violence" (a listed crime), but also the "threat" of force or violence (a crime that is not listed). Many criminal statutes, particularly federal criminal statutes, cover a wide range of conduct, only some of which amounts to listed conduct. The Travel Act, for example, forbids travel in interstate commerce with intent to

(1) distribute the proceeds of any unlawful activity; or

(2) commit any crime of violence to further any unlawful activity; or

(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity.

18 U.S.C. § 1952 (1982). It thus covers both those who commit serious assault, robbery, or even murder, and those who commit other crimes that are not listed. There is no reason to think that Congress intended to exempt those who commit listed crimes under one part of a statute simply because other parts of the same statute might cover other, unlisted crimes.

■ The more difficult question is whether it matters that the same words that cover listed conduct—"use of force or violence"—also cover unlisted conduct (simple assault). We think it does not make a critical difference, for otherwise many of those charged with, and convicted of, aggravated assault would escape disqualification. This is so because many state and federal statutes, like the common law, lump simple and aggravated assault together, distinguishing among assaults on bases other than the degree of injury caused. *See* R. Perkins & R. Boyce, *Criminal Law* 180–81 (3d ed. 1982). Massachusetts, for example, has a general assault statute that simply forbids "an assault or an assault and battery upon another," making equally guilty those who, without a weapon, cause no serious injury and those who seriously injure their victims. Mass.

Gen.Laws ch. 265, § 13A; *cf.* Mass.Gen. Laws ch. 265, § 14 (covering assault with a dangerous weapon that inflicts serious physical injury). And, both federal and state criminal codes contain "special circumstances" provisions that, like the "intimidation" statute, do not distinguish among degrees of assault. *See, e.g.*, 18 U.S.C. § 111 (1982) (making it a crime to "forcibly assault" a government official irrespective of the injury caused); Mass.Gen. Laws ch. 268, § 13B (1982) (forbidding, among other things, attempts to influence a witness or juror by "intimidation, force or threats of force").

The "intimidation" statute before us aims in significant part at conduct (aggravated assault) that amounts to one of the listed crimes. It does not aim at totally different conduct that could involve assault only through a freak coincidence. This being so, neither the fact that the statute's language does not precisely track that of the disqualification list, nor the fact that the language is somewhat broader than that of the list, nor the fact that other parts of the statute go beyond the list can *automatically* remove Lynch's conviction from the scope of the disqualification statute. To hold otherwise would subject enforcement of the disqualification statute to the irrelevant linguistic vagaries of the vast array of state and federal criminal statutory provisions.

### III

Second, does it make a critical difference that the "intimidation" crime is a "misdemeanor"—that the statute provides for a maximum prison term of "not more than one year"? *See* 18 U.S.C. § 1 (defining a "misdemeanor" as any "offense" other than one "punishable by death or imprisonment for a term exceeding one year"). We recognize the strong argument that this fact does make a difference. The disqualification statute's drafters intended it to apply to "serious" crimes, *see supra,* p. 7, and the "misdemeanor" label typically applies to crimes that are not very serious. *See* R. Perkins & R. Boyce, *supra,* at 14–15, 18–19 (noting that "misdemeanors" are

commonly defined according to lesser penalties imposed). Moreover, the drafters repeatedly referred to disqualified persons as "felons," thus implying that they would be guilty of felonies, not of misdemeanors. *See* 105 Cong.Rec. at 6299–300 (statement of Sen. Mundt); *id.* at 7022 (statement of Sen. Kennedy); *id.* at 14990 (statement of Rep. Morse); *id.* at 15687 (statement of Rep. Metcalf) (quoting letter from Robert F. Kennedy, Chief Counsel, Senate Select Committee on Improper Activities in the Labor Movement Field); *id.* at 17912 (statement of Sen. Ervin); *id.* at A8519 (statement of Sen. Goldwater). Of course, Congress specifically rejected language that would have imposed disqualification upon those convicted of "any felony." *See* Labor-Management Reform Legislation: Hearings Before the Subcommittee on Labor of the Senate Committee on Labor and Public Welfare, 86th Cong., 1st Sess. 540–41 (1959) (hereafter "Hearings"); 105 Cong.Rec. at 14990 (statement of Sen. Morse); *cf.* 104 Cong.Rec. 10994 (1958) (statement of Sen. Allott) (favoring "any felony" provision). But this fact (in principle) might show only that Congress meant "felony conviction" to be a *necessary,* but not a *sufficient,* condition for disqualification.

■ Despite the strength of these arguments, however, we do not believe that the misdemeanor label here makes a critical difference. For one thing, the plain language of the disqualification statute does not limit its application to felony convictions. The text of § 504 does not say that a person convicted of "assault which inflicts grievous bodily injury" is disqualified only where the conviction is of a felony. And, later language in the statute specifically covers misdemeanor convictions under certain special labor-related statutes (not including the "intimidation" statute). *See* 29 U.S.C. §§ 439, 461 (1982) (establishing certain misdemeanor reporting violations); 29 U.S.C. § 463 (1982) (establishing misdemeanor violations relating to administration of unions in trusteeship). At the same time, the statute specifically limits disqualification for "abuse or misuse of [a] person's position or employment in a labor organization

or employee benefit plan" to felony convictions. The fact that the statute covers at least some misdemeanors and the fact that in one instance it explicitly limits its coverage to felonies suggest that, where it imposes no explicit limitation, the statute covers serious listed conduct regardless of whether the conviction is for a felony or a misdemeanor.

For another thing, to read disqualification as turning on the classical felony/misdemeanor distinction risks imparting a considerable degree of arbitrariness into the statute's application. This is so in part because the classification of crimes as "felonies" or "misdemeanors" varies considerably from state to state. One of the statute's principal sponsors, Senator John F. Kennedy, recognized this fact as a reason not to simply disqualify those convicted of "any felony," as indicated by the following colloquy with Arthur J. Goldberg, then counsel for the AFL–CIO and later Supreme Court Justice:

> Senator KENNEDY.... [T]here is a tremendous variance in the State laws in regard to what constitutes a felony.
> Mr. GOLDBERG. That is correct.
> Senator KENNEDY. I recall a discussion last summer on this point. In the State of Texas disturbance on a picket line is a felony.
> Mr. GOLDBERG. The Daniels Act in the State of Texas provides that.
> Senator KENNEDY. Then I think we came up with another example, fraudulent voting registration in Mississippi is a misdemeanor and in Minnesota it is a felony. If they did it in Mississippi they would be eligible. If they did it in Minnesota they would be ineligible.
> The prohibition as to political contribution by labor in Indiana is a misdemeanor and in Wisconsin it is a felony.
> Blackmail in Delaware is a misdemeanor and in Arkansas it is a felony. And so on. There are a good many of them.

Hearings at 541.

The definition of a "misdemeanor" also varies from state to state. Massachusetts defines a "misdemeanor" as a crime not

"punishable by death or imprisonment in the state prison" (but punishable instead by confinement in a "house of correction"). Mass.Gen.Laws ch. 274, § 1 (1984); *cf.* 18 U.S.C. § 1 (defining "misdemeanor" as a crime not "punishable by death or imprisonment for a term exceeding one year"). Thus, in Massachusetts an assault (punishable by up to two and one-half years in a house of correction) may constitute a misdemeanor even if the assault permanently disables the victim. Mass.Gen.Laws ch. 265, § 13A (1984). To exclude a crippling assault from § 504 simply because Massachusetts calls it a "misdemeanor" would make no more sense than to include a trivial assault that another state happens to consider a felony.

■ This problem is aggravated when one considers *federal* prosecutions, because federal statutes sometimes impose fairly minor penalties upon fairly serious crimes. One obvious example is a civil rights statute, 18 U.S.C. § 242 (1982), which forbids "the deprivation of any [federal] rights, privileges, or immunities" under color of law, but carries a maximum penalty of only one year in prison (unless death results). Other federal misdemeanor statutes aim directly at bribery of the sort that the disqualification statute lists. *See, e.g.,* 18 U.S.C. § 210 (1982) (offer to procure appointive public office); 18 U.S.C. § 211 (1982) (acceptance or solicitation to obtain appointive public office); 18 U.S.C. § 212 (1982) (offer of loan or gratuity to bank examiner); 18 U.S.C. § 213 (acceptance of loan or gratuity by bank examiner). We think it unlikely that the disqualification statute's sponsors intended to exempt a civil rights act offender who, for example, committed a crippling assault. But if the statute applies to a civil rights act offender who committed a crippling assault, then it must also apply to an "intimidation" statute offender who engaged in similar conduct. And, it must also apply to Lynch (assuming that Lynch was convicted of conduct amounting to "assault which inflicts grievous bodily injury"). To make the felony/misdemeanor distinction determinative risks making disqualification turn on irrelevant state or federal classifications or terminology. Rather, in our view, the disqualification statute should apply where

(1) the statute of conviction aims, in part, at serious conduct of the kind listed in the disqualification statute and (2) the offender violates the statute of conviction by engaging in the type of conduct that the disqualification statute lists.

## IV

Third, does it matter that the jury at Lynch's "intimidation" trial might have convicted him even if it believed that Lynch only *threatened* force, that he did not *engage* in conduct amounting to a listed crime? To put the matter differently, how can we know, given the broad language of the "intimidation" statute and given a jury charge permitting conviction for merely *threatening* harm, that Lynch really did commit an "assault which inflicts grievous bodily injury?" In principle, this question raises a difficult issue: Suppose that a statute's language (*e.g.,* "use of force or violence") covers both listed and unlisted behavior; suppose that the elements of the offense as stated in the indictment are not limited to behavior that constitutes a listed offense (*e.g.,* the indictment describes an assault causing physical injury without specifying the extent of injury); and suppose that the jury convicts under a charge that would permit conviction on a finding of either listed or unlisted conduct. Can the disqualification statute then apply?

On the one hand, we might consider disqualification to be a kind of additional punishment and then allow a judge (perhaps at the original trial) to find the necessary factual predicate by a preponderance of the evidence. *Cf. McMillan v. Pennsylvania,* — U.S. —, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986) (factual finding requiring imposition of mandatory minimum sentence may be made by trial judge on a preponderance of the evidence); *but cf. United States v. Fatico,* 458 F.Supp. 388, 408 (E.D.N.Y. 1978) (applying "clear, unequivocal and convincing evidence" standard where factual finding "will result in a much longer and harsher sentence"), *aff'd,* 603 F.2d 1053 (2d Cir.1979), *cert. denied,* 444 U.S. 1073, 100 S.Ct. 1018, 62 L.Ed.2d 755 (1980). On the other hand, the statutory language of

§ 504 says that it applies only upon a "conviction of" one of the listed crimes, and violation of the disqualification statute is itself a crime. These features may argue for a stricter standard of proof of the disqualifying conduct, at least in the context of a criminal prosecution under § 504.

■ Regardless, we need not resolve these issues here, for the Union has stipulated that Lynch punched his victim in the face, breaking his nose. And, Lynch stipulated at his trial that his victim required hospital treatment "on the evening of September 7, 1983" and "surgery . . . at the Milton Hospital" on September 9. The Union's claim that the victim had an especially weak nose is not properly before us, for the Union failed to raise this matter below. *See Johnston v. Holiday Inns*, 595 F.2d 890, 894 (1st Cir.1979). Moreover, this court, when it reviewed Lynch's conviction, wrote that Lynch's claim of insufficient evidence was "frivolous." We had "no doubt that a jury could . . . [have found] the punch to [the victim], standing by itself, enough to support . . . conviction[ ]." *Lynch*, 792 F.2d at 272. The Union has not seriously challenged that a punch requiring hospitalization and surgery for a broken nose amounts to an "assault which inflicts grievous bodily injury." *See supra* at 654 –655. All this being so—the introduction of sufficient evidence at Lynch's criminal trial to warrant the jury's finding that he engaged in listed conduct, our judicial holding of a reasonable likelihood that the conviction in fact rested on this conduct, *and* the Union's *admission* that the offender engaged in this conduct—we conclude that the district court correctly found the necessary disqualifying facts. Moreover, we believe that application of the disqualification statute under these circumstances is sufficiently clear so as not to render its criminal provisions void for vagueness. This is especially so in light of the statute's explicit provision that a criminal violation of its terms must be "willful." 29 U.S.C. § 504(b); *see Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982); *Harris v. McRae*, 448 U.S. 297, 311 n. 17, 100 S.Ct. 2671, 2685 n. 17, 65 L.Ed.2d 784 (1980) (discussing importance of scienter requirement to void-for-vagueness analysis).

### V

■ The Union makes one final argument. It says that the district judge should have disqualified himself from hearing this declaratory judgment action because he had previously found, on the government's motion to revoke bail pending Lynch's appeal of his conviction, "probable cause" to believe that Lynch's retention of his union office was a crime. *See* 18 U.S.C. § 3148(b) (Supp. II 1984). It is well established, however, that participation in prior proceedings involving the same or similar facts or parties does not in itself constitute grounds for disqualification. *See United States v. Kelley*, 712 F.2d 884, 889–91 (1st Cir.1983) (prior ruling against defendant's attorney); *United States v. Parrilla Bonilla*, 626 F.2d 177 (1st Cir.1980) (participation in prior related proceedings); *United States v. Cepeda Penes*, 577 F.2d 754, 757–58 (1st Cir.1978) (prior rejection of defendants' *nolo contendere* pleas); *United States v. Cowden*, 545 F.2d 257, 265–66 (1st Cir.1976) (judge presided over earlier trial of alleged conspirators), *cert. denied*, 430 U.S. 909, 97 S.Ct. 1181, 51 L.Ed.2d 585 (1977). Rather, the standard "is whether the charge of lack of impartiality is grounded on facts that would create a reasonable doubt concerning the judge's impartiality . . . in the mind of the reasonable man." *Cowden*, 545 F.2d at 265; *see also Cepeda Penes*, 577 F.2d at 758 (requiring some indication of "friction between the judge and the complaining party"). Here, the Union has pointed to no facts other than the judge's earlier ruling that might call his impartiality into question. He therefore was not required to withdraw.

For these reasons, the judgment of the district court is

*Affirmed.*