336

UNITED STATES of America

v.

Henry Lee BURGESS.

Cr. No. 3:93–173.

United States District Court,
D. South Carolina,
Columbia Division.

Nov. 4, 1993.

Marshall Prince, Asst. U.S. Atty., Columbia, SC, for plaintiff.

Henry W. Kirkland and Henry Wesley Kirkland, Jr., Kirkland, Dodson, Rush & Riddle, Columbia, SC, for defendant.

## ORDER

JOSEPH F. ANDERSON, Jr., District Judge.

This matter is presently before the court on defendant's motion to suppress all statements of defendant and the seizure of all evidence. The defendant asserts that the police seized the evidence against him in violation of his Fourth Amendment rights. On September 27, 1993 the court conducted an evidentiary hearing on this motion.

In addition, the defendant has challenged the composition of the jury venire, asserting that the panel does not reflect a fair cross section of the community. The defendant claims that the jury venire contains a disproportionately low number of African Americans and has a disproportionately high education level compared to the general community. The court heard argument from counsel on this motion on October 4, 1993, before the petit jury was selected for this case.

This order addresses both of the defendant's motions, and for the reasons discussed below, both motions are denied.

The defendant, Henry Lee Burgess, was indicted on August 4, 1993 for violating 18 U.S.C. §§ 922(g) and 924(a) by possessing firearms after having previously been convicted of a felony, which firearms had been shipped and transported in interstate commerce. The charges against Burgess arose from the discovery of the weapons during a police investigation of the defendant's son, Von Christopher Burgess, who was arrested by the City of Columbia for burglary of a pawn shop.

On August 14, 1992 a federal magistrate issued two search warrants pursuant to Von Burgess's arrest for burglary. The warrants were issued for 614 North Street, apartments C and D, West Columbia, South Carolina and described the objects of the search as "gold jewelry, rings, Colt .357 magnum handgun, serial number 258131, and any stolen goods." Apartment C was the residence of the defendant, Henry Lee Burgess, the father of Von Burgess. Apartment D was the residence of Bessie Burgess, defendant's mother (Von Burgess's grandmother). While Von Burgess was in custody, he told the police that he lived with his grandmother in apartment D; however, Henry Burgess came to the police station after his son's arrest and told the police that Von lived with him in apartment C. Accordingly, because of this discrepancy about which apartment Von Burgess actually lived in, the police obtained warrants for both apartments C and D.

On the afternoon of August 14, 1992 officers from the Columbia police department, aided by officers from the West Columbia police department, executed the search warrants on both apartments. In apartment C, the defendant's residence, the officers seized three rifles and one cable television box. In apartment D, the officers seized a 9mm semi-automatic pistol, as well as various items alleged to be stolen property. Upon discov-

ering the pistol, one of the officers asked Burgess's mother, who resides in apartment D, if she knew who owned the pistol, and she allegedly responded: "That's my son Henry's pistol" (referring to the defendant, Henry Burgess). Furthermore, as the police officers exited the apartments with the seized weapons, the defendant arrived at the scene and allegedly claimed ownership of the weapons.

## I. Motion to Suppress

The defendant moved to suppress the evidence seized in apartments C and D, claiming that the police officers seized the weapons in violation of the Fourth Amendment.[1] It is uncontested that the weapons seized in apartments C and D were not specifically listed on the search warrants. Accordingly, to be valid the seizures must fit within the "plain view" exception to the Fourth Amendment's warrant requirement.

■ Under the plain view doctrine, a police officer may seize evidence without a warrant if the officer can demonstrate: (1) that he was lawfully located in a place from which he could plainly view the object; (2) that he had a "lawful right of access to the object itself"; and (3) that the incriminating character of the object was "immediately apparent." *Horton v. California*, 496 U.S. 128, 136, 110 S.Ct. 2301, 2308, 110 L.Ed.2d 112 (1990).[2]

Burgess does not challenge the validity of the police officers' intrusion into either of the apartments under the search warrants, nor does he assert that the seizure of the guns was advertent, or the result of a "pretext search." Burgess's sole contention in his motion to suppress is that the officers allegedly had no probable cause to seize the weapons because, he argues, the incriminating

nature of the guns was not immediately apparent upon their plain view.

■ The government first contends that Burgess does not have standing to challenge the admissibility of the pistol that was seized from apartment D, the residence of the defendant's mother. The court agrees.

■ It is well established that Fourth Amendment rights against unreasonable searches and seizures are personal and "'may not be vicariously asserted.'" *Rakas v. Illinois*, 439 U.S. 128, 133–34, 99 S.Ct. 421, 424–26, 58 L.Ed.2d 387 (1978) (quoting *Alderman v. United States*, 394 U.S. 165, 174, 89 S.Ct. 961, 967, 22 L.Ed.2d 176 (1969)). In order to have standing to challenge the admissibility of evidence allegedly seized in violation of the Fourth Amendment, the defendant must have "a reasonable expectation of privacy in the area searched, not merely in the items found." *United States v. Horowitz*, 806 F.2d 1222 (4th Cir.1986) (citing *Rawlings v. Kentucky*, 448 U.S. 98, 104–06, 100 S.Ct. 2556, 2561–62, 65 L.Ed.2d 633 (1980)). The test for reasonable expectation of privacy is: (1) whether the defendant "has 'exhibited an actual (subjective) expectation of privacy,'"; and (2) whether that "expectation of privacy is 'one that society is prepared to recognize as "reasonable."'" *Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979) (quoting *Katz v. United States*, 389 U.S. 347, 361, 351, 88 S.Ct. 507, 517, 511, 19 L.Ed.2d 576 (1967)). The defendant bears the burden of proof on this issue. *Rakas*, 439 U.S. at 130 n. 1, 99 S.Ct. at 424 n. 1.

Burgess has not demonstrated that he had a subjective expectation of privacy in the

---

1. The Fourth Amendment to the United States Constitution provides:

    The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

    U.S. Const. amend. IV.

2. In *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), a plurality

of the Court stated that the plain view exception also required that the discovery of the object be inadvertent. *Id.* at 469–70, 91 S.Ct. at 2040; *accord Texas v. Brown*, 460 U.S. 730, 736–37, 103 S.Ct. 1535, 1540–41, 75 L.Ed.2d 502 (1983) (plurality); *United States v. Fawole*, 785 F.2d 1141, 1145 (4th Cir.1986); *United States v. Dart*, 747 F.2d 263, 269 (4th Cir.1984). However, in *Horton* the Court concluded "that even though inadvertence is a characteristic of most legitimate 'plain view' seizures, it is not a necessary condition." *Horton*, 496 U.S. at 130, 110 S.Ct. at 2304.

apartment in which the police seized. the pistol. Burgess did not live with his mother in apartment D, nor did he establish that he had sufficient control over the apartment to indicate a reasonable expectation of privacy, such as the power to exclude others' use of the premises. *See, e.g., United States v. Melucci,* 888 F.2d 200, 202 (1st Cir.1989) ("Apart from a subjective expectation of privacy and the objective reasonableness of such an expectation, some of the factors that bear on the existence of a legitimate expectation of privacy include: ownership, possession or control of the premises searched; the ability to control or to exclude others' use of the premises; a legitimate presence on the premises at the time of the search; and the totality of the circumstances."). Because Burgess has not satisfied his burden of proof on this issue, he has no standing to challenge the seizure of the pistol in his mother's apartment. *See United States v. Sweeting,* 933 F.2d 962 (11th Cir.1991) (holding that defendants charged with illegal possession of weapons lacked standing to object to search of a house in which weapons were found; defendants had claimed that the house was owned by their mother and occupied by their grandmother, but neither defendant resided there).

█ Even if Burgess had standing to challenge the seizure of the pistol in his mother's apartment, his motion to suppress must fail. Burgess claims that the police had no probable cause to seize either the pistol from apartment D or the rifles from apartment C because the criminality of these weapons was allegedly not immediately apparent. He argues that the officers did not have probable cause to believe that the guns were evidence of any crime until Burgess arrived at the scene and claimed ownership of the weapons—after the weapons had been seized.

However, the evidence adduced at the suppression hearing indicates that before the warrants were executed the police knew that apartment C was the residence of Henry Burgess and that Burgess had a prior felony conviction. Officer Ricky Seel of the Columbia police department, the officer in charge of the investigation, testified that prior to executing the warrants he ran a "rap sheet"

on Burgess and discovered that Burgess was a convicted felon. Seel also testified that before the execution of the warrants he held an informal briefing with the officers who were assisting with the investigation. At this briefing, Seel informed the other officers that Burgess was a convicted felon and that they should exercise the appropriate caution. Furthermore, Burgess's criminal history was well known by the West Columbia police officers who assisted with the execution of the warrant, because Burgess had served as an informant for that department for several years.

Because the police officers knew, before they executed the warrants, that Burgess was a convicted felon, when they found the guns in his apartment the criminal nature of the evidence was immediately apparent. Accordingly, the police had probable cause to seize the three rifles found in plain view in apartment C.

█ In addition, the police officers had probable cause to seize the pistol from apartment D. After the officers found the handgun in plain view, one of the officers asked Bessie Burgess whether she knew who owned the gun. Ms. Burgess replied that the gun belonged to the defendant, Henry Burgess. As discussed above, before the warrant was executed the police officers knew that the defendant had a prior felony conviction. Accordingly, when Ms. Burgess indicated that the gun belonged to the defendant, the criminality of the weapon became immediately apparent, and the police had probable cause to seize it.

## II. Motion Challenging the Jury Venire

█ Before jury selection in this case, the defendant filed a motion to challenge the jury venire, claiming that the venire is not a fair cross section of the community in that the panel contains a disproportionately low number of African Americans and has a disproportionately high education level. At oral argument on this motion, the defendant abandoned his racial claim, so this order addresses only the challenge based on education level.

The Sixth Amendment to the United States Constitution provides, in part: "In all criminal prosecutions, the accused shall enjoy the right to a . . . trial, by an impartial jury of the State and district wherein the crime shall have been committed. . . ." U.S. CONST. amend. VI. In *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), the Supreme Court recognized "that the Sixth Amendment affords the defendant in a criminal trial the opportunity to have the jury drawn from venires representative of the community." *Id.* at 537, 95 S.Ct. at 701.

> In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duran v. Missouri,* 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979).

The defendant's challenge based on the education level of the venirepersons in this case fails to meet all of the elements of a prima facie violation. First, it appears well settled that "less educated individuals" are not a cognizable or distinctive group under *Duran. Anaya v. Hansen,* 781 F.2d 1, 8 (1st Cir.1986) (citing *United States v. Kleifgen,* 557 F.2d 1293, 1296 (9th Cir.1977); *United States v. Potter,* 552 F.2d 901, 905 (9th Cir. 1977); *United States v. Cabrera–Sarmiento,* 533 F.Supp. 799, 804, 807 (S.D.Fla.1982); *United States v. Abell,* 552 F.Supp. 316, 324 (D.Me.1982); *Figueroa v. Puerto Rico,* 463 F.Supp. 1212, 1214 (D.P.R.1979)).

■ Secondly, even if less educated persons constitute a cognizable group, the defendant has failed to prove that the education level of the jury venire is not a fair and reasonable representation of the education level of the community. As the Fourth Circuit has recognized, "the Constitution does not require that the juror selection process be a statistical mirror of the community." *United States v. Cecil,* 836 F.2d 1431, 1445 (4th Cir.) (en banc), *cert. denied,* 487 U.S. 1205, 108 S.Ct. 2846, 101 L.Ed.2d 883 (1988). " '[A] showing of mere statistical underrepresentation, without evidence of actual discriminatory or exclusionary practices' [is] insufficient to establish 'a prima facie violation of the sixth amendment fair cross-section requirement.' " *Id.* at 1446 (quoting *United States v. Lynch,* 792 F.2d 269, 271 (1st Cir. 1986)).

The defendant introduced into evidence, as Defendant's Exhibit 1, statistics depicting the educational attainment of persons aged eighteen and over in South Carolina, according to the 1990 census. The prosecution stipulated that these statistics were reasonably accurate and did not object to their introduction. The court compared these statistics with the actual education level of the jury venire,[3] and the results are presented in the Table in the Appendix. While the average education level of the jury venire is somewhat higher than that of the entire state, the disparity is not so great as to support a claim under the Sixth Amendment's fair cross-section requirement. *See* Appendix.

■ Finally, even assuming that the defendant meets the first two prongs of the *Duran* test, the defendant's challenge must fail because he cannot establish that the underrepresentation of less-educated persons on the venire is due to systematic exclusion of the group in the jury-selection process. The United States District Court for the

---

**3.** The defendant's initial concern about the education level of the jury venire was based in part on a misunderstanding of the information provided on the official jury roster. The roster provides the education level of each juror; however, the information listed in this column represents the highest academic institution the jury member has attended; it does not indicate graduation. For example, if the column indicates "college," that merely means that the venireperson attended some college—the juror could have attended one day, or the juror could have a Ph.D.

Because of this potential confusion, at the roll call of the jury venire the court asked each venireperson what his or her education level was. Accordingly, the figures in the Table in the Appendix are based on the individual responses of the members of the panel who were present at the roll call. There were a total of 76 persons present for voir dire.

District of South Carolina selects its jury venires at random from the current voter registration list. The Fourth Circuit has resoundingly approved of this method of selecting jurors. *United States v. Cecil*, 836 F.2d 1431, 1444–55 (4th Cir.) (en banc), *cert. denied*, 487 U.S. 1205, 108 S.Ct. 2846, 101 L.Ed.2d 883 (1988). As the *Cecil* court observed:

> Not only has the use of voter registration lists been uniformly adopted by the Court of Appeals as the basic source for the jury selection process and will not be invalidated because a group chooses not to avail itself of the right to register without any discrimination of any kind, but Congress specifically approved the use of such lists even though it was recognized that persons who chose not to register would be excluded from the jury selection process.

*Id.* at 1448. Accordingly, this court concludes that the use of voter registration lists to select the jury venire does not deprive the defendant of his right to have his case tried by a jury that is representative of a fair cross-section of the community.

For the foregoing reasons, the defendants motion to suppress is denied, and the defendant's motion to dismiss the jury venire is denied.

IT IS SO ORDERED.

## APPENDIX

Table

Comparison of education level of jury panel 015,

United States District Court—District of South Carolina,

with that of South Carolinians aged 18 and older,

1990 census